Dorsey Lee JOHNSON, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 69750.

Court of Criminal Appeals of Texas,
En Banc.

June 21, 1989.

Frank W. Conard, II, Sweetwater, for appellant.

Ernie B. Armstrong, Dist. Atty., Snyder, Robert Huttash, State's Atty., Austin, for the State:

## OPINION

McCORMICK, Presiding Judge.

This is a direct appeal from a conviction of capital murder. V.T.C.A., Penal Code, Section 19.03(a)(2). Appellant was convicted of intentionally causing the death of Jack Huddleston in the course of committing and attempting to commit the offense of robbery. Upon finding appellant guilty of capital murder, the jury affirmatively

answered the special issues under Article 37.071(b)(1) and (2), V.A.C.C.P. Punishment was then assessed at death. We will affirm.

Appellant alleges seven points of error which we will address in the order in which they arose at trial. Appellant does not assert any sufficiency challenges, therefore, recitation of the facts is not required. We do, however, find a brief synopsis of the events which occurred in March 1986, appropriate.

In the early morning hours of Sunday, March 23, 1986, appellant and his accomplice, Amanda Miles, decided to commit a robbery at the Allsup's convenience store in Snyder. After planning the crime, deciding that there should be no witnesses, and waiting for the store to clear of customers, the pair entered the store. On the pretext of wanting a particular item, appellant lured Huddleston, the clerk, back to the cooler where he was told this was a robbery and to lie face down on the floor. Appellant then shot the clerk in the back of the neck with a .25 caliber pistol, killing him. Amanda Miles emptied out the cash drawer taking approximately $160.00 (one hundred sixty dollars). Two cartons of cigarettes were also taken.

Appellant was arrested in April for a subsequent robbery and attempted murder of a store clerk in the neighboring town of Colorado City. It was in the course of investigating this latter offense that appellant confessed to the capital offense committed in Snyder.

In his seventh point of error, appellant alleges that the trial court erred in failing to grant his motion for change of venue. Appellant asserts that the pretrial publicity of his case prevented him from receiving a fair trial, the result of which denied him the right to equal protection and due process. See Article 31.03, V.A.C.C.P.

When a motion for change of venue has been denied the standard of review to be applied by appellate courts is whether after review of the record the evidence reflects the trial court abused its discretion in refusing the motion. *Phillips v. State,* 701 S.W.2d 875 (Tex.Cr.App.1985) cert. denied 477 U.S. 909, 106 S.Ct. 3285, 91 L.Ed.2d 574 (1986). This abuse of discretion must be determined in light of whether outside influences affecting the community climate concerning a particular defendant were inherently suspect. *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Phillips,* 701 S.W.2d at 879.

Merely because a case is publicized is not, in and of itself, a sufficient reason to change venue—a venire need not be completely ignorant of the facts and circumstances which surround a particular case. *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Eckert v. State,* 623 S.W.2d 359 (Tex.Cr.App.1981) (overruled on other grounds by *Reed v. State,* 744 S.W.2d 112 (Tex.Cr.App.1988)). A further factor to be considered is the passage of time. Where a period of time has passed between the publicity complained of and the time of trial, such delays tend to negate the inference that publicity would affect the climate of opinion in a community. *Nethery v. State,* 692 S.W.2d 686 (Tex.Cr.App.1985) cert. denied, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Adami v. State,* 524 S.W.2d 693 (Tex.Cr. App.1975).

Therefore, where the evidence is not sufficient to show that in the community there existed a pervasive feeling that the ability of the movant to receive a fair trial by an impartial jury was doubtful, then the decision rendered by the trial court to deny such a motion will not be disturbed on appeal. *Beets v. State,* 767 S.W.2d 711, 742 (Tex.Cr.App.1988).

In October, 1986, a hearing was held on appellant's motion for change of venue. Accompanying appellant's motion were ten affidavits from residents of Scurry County. In each affidavit, the affiant swore that in their opinion appellant could not receive a fair trial in the community. However at the hearing, the seven compurgators which appeared testified on cross-examination, that they had changed their minds and now thought appellant could receive a fair trial. In additional support of

his motion, and aside from the affidavits attached thereto, appellant introduced into evidence, through several representatives of the local media, news articles printed in newspapers and heard on the radio in Scurry County. The coverage consisted of some 14 to 16 articles of various sizes covering a variety of topics from the actual murder at the time it occurred to a suppression hearing held shortly before the change of venue hearing and selection of the jury.

The State pointed out through cross-examination of these witnesses that the reporting of the case was fair, non-inflammatory and for the purpose of informing the public of a current event. These witnesses also testified that they believed appellant could receive a fair trial.

The State brought forth seven witnesses from various areas of the county who testified that they had not heard any or at least had heard only very little discussion about the case since its occurrence in March. The media coverage had little effect on them or on any of the people they knew. Additionally, these witnesses testified that it was their opinion that appellant could receive a fair and impartial trial from a jury made up of Scurry County residents. At the close of evidence and final statements the trial court denied appellant's motion for change of venue.

In reviewing the testimony adduced at the hearing we find that the evidence supports the decision made by the trial court. The record reflects that the type and fashion of reporting was not of the requisite character as to create a suspect environment which would prevent the rendering of a fair trial, thereby depriving appellant of equal protection and due process of law.

Here it was not demonstrated that the publicity was anything other than an accurate reporting of an unusual occurrence in Scurry County. There was no evidence of any prejudicial or inflammatory remarks made in any of the articles. Additionally, the publicity complained of herein took place over the course of more than six months since the murder and nearly six months since appellant's arrest.

Therefore, the trial court did not abuse its discretion in denying the motion for change of venue. As a result, appellant's seventh point of error is overruled.

Appellant, in his second point of error, alleges that the trial court committed error in denying his challenge for cause of veniremember Nachlinger. Appellant asserts that Nachlinger had already formed a conclusion as to appellant's guilt. See Article 35.16(a)(10), V.A.C.C.P.

In making a determination as to the propriety of rulings on challenges for cause of this variety, the Court will review and determine if the trial court abused its discretion in light of the entire examination of the veniremember. That is, whether the record reflects the evidence tends to reasonably support the trial court's implied findings that the veniremember would be able to perform the tasks that are assigned to jurors in this State. See *Hernandez v. State*, 757 S.W.2d 744 (Tex.Cr.App.1988).

Nachlinger testified that he would follow the law as proscribed by the oath and would render a verdict based solely upon the evidence presented at trial. Nachlinger understood the concept of proof beyond a reasonable doubt and would require the State to provide that proof, otherwise he would return a verdict of not guilty.

During the State's voir dire examination the following colloquy took place regarding the prospective juror's feelings on presumption of innocence:

"Q. [Prosecutor] Do you understand that that indictment is not evidence that he is guilty. It cannot be used or even considered to be evidence that he is guilty?

"A. Yes, sir.

"Q. Do you understand that?

"A. Yes.

"Q. Having been charged with that offense, it merely means that we can go to trial and try to prove our case. He is presumed innocent and will remain innocent and presumed innocent until such time as the State produces evidence which shows beyond a reasonable doubt that he is guilty.

"A. Yes, sir.

"Q. All right. Do you have any problems with the presumption of innocence that the law affords to any individual?

"A. No, sir. That's fair.

"Q. Would agree you would afford that presumption to this defendant? You have not yet determined in your own mind because you have not heard any evidence and you understand the principle that he is presumed innocent at this time as he sits here in the Courtroom. He is innocent and he is not guilty because there has been no proof.

"A. Yes."

During appellant's voir dire examination, Nachlinger was asked about an answer he entered on his questionnaire regarding his personal philosophy, in which he wrote, "[t]he man killed another man who was holding down an honest job. I see little need in a trial." When asked whether he remembered specifics about the crime he said he did not, except that he had heard there was a confession and that is why he had written in that response. When questioned further on his feelings regarding appellant's guilt or innocence the following transpired:

"Q. [Appellant] In your heart now—this is not an abstract thing, but how do you really feel inside?

"A. Well, if you know—if I was listening to this and reading what I have read, if he can be proven otherwise, you know, I'm not completely ironed in on one thing anywhere, but, you know, I have been known to change my mind and I can do it. You know, I'm willing to listen to anything. But, like I say, you know, didn't sound real good.

"Q. Well, again, what you say, if it can be proven otherwise, that is—and you said that you heard that he gave a confession and you have heard people talking about and you have heard that it was a cinch deal and what that kind of tells me is that you must have felt that at some point or at least when you wrote this paper out that Dorsie Johnson must be guilty of this. Is that how you felt when you—I mean just general feelings inside and not thinking about what the State has to prove and this and that, but just how you actually felt?

"A. Well, sir, I suppose so.

"Q. Is that—I suppose so. Do you think that that is really an accurate answer: yes or no?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. Do you think that that conclusion and that idea that you have already set up in your mind and expressed by even saying, 'I see little need in a trial,' you think that would influence your actions and your deliberations and your decision if you were on the Jury?

"A. Well, I hope it wouldn't, but I'm sure it probably could.

"Q. In other words, are you saying—

"A. Yes, sir, I think I could. I don't know, you know.

\* \* \* \* \* \*

"A. Well, you know, you say I have formed a conclusion here. If I was going to take what I have already read and just, you know, pass a verdict now, it would probably be a guilty verdict. But if I was to get on this deal here and, you know, I mean that's not a cut and dried thing in my mind right now, you know. I believe I could go in here open minded, you know. I'd try to do it the best I could.

\* \* \* \* \* \*

"Q. Honestly and from your feelings and not from abstract ideas, but just from your heart?

"A. Well, I'm—you know, I know what you're getting at here. I know what I wrote down on the questionnaire and all, but, well—you know, you just kind of leading it around and I feel like I've told you now two or three times, but I don't really know how to go ahead and tell you is what I'm getting at. I feel like I've already told you this a couple of times, you know. I don't know really what you're hunting or pushing on here.

\* \* \* \* \* \*

"Q. Do you understand that if a person—if those conclusions from a person or yourself or any Juror influences their decision—in other words, if it caused you to say, well, I think he is guilty, but if he can convince me he is not, you understand that person would have the duty not to be on that Jury?

"A. Yes, sir.

"Q. And do you feel that you would fit that category because of that reason? [No response]

"Q. Of course, there is nothing wrong with it if you fit that category and because you have read all of those things or heard people talking about them, there is nothing wrong with that. If you feel that you would, then that is what I would like to know.

"A. Yes, sir. I believe it could have some effect on my judgment.

"Q. You think—I hate to keep pushing. You say it could have. Do you think it would have?

"A. Yes, sir."

It was at this time that appellant challenged veniremember Nachlinger for cause on the ground that Nachlinger had already formed an opinion as to appellant's guilt. Article 35.16(a)(10), V.A.C.C.P. The judge overruled the challenge and allowed further questioning by the State which drew another objection from appellant in that pursuant to Article 35.16(a)(10), supra, no further questioning should be allowed.[1] This objection was overruled[2] and examination by the State continued in part as follows:

"Q. [Prosecutor] All right. Now, then, do you know anything—know anything that tells you beyond a reasonable doubt at this time that Dorsie Johnson is the one that committed this crime?

"A. No, sir.

"Q. And would you require the State, that is me and my witnesses, to prove to you beyond a reasonable doubt that this Dorsie Johnson is the one that committed the crime before you found this Dorsie Johnson guilty?

"A. Yes, sir. It'd have to be proven to me."

■ Nachlinger stated that the State would have to prove appellant's guilt beyond a reasonable doubt, that he understood the presumption of innocence and would abide by it and that he would render a verdict based upon the evidence adduced at trial. There is sufficient evidence in the record to support the trial court's implied finding of fact that Nachlinger was a qualified juror. Therefore, the trial court did not abuse its discretion in overruling appellant's challenge for cause. *Nethery v. State*, 692 S.W.2d 686 (Tex.Cr.App.1985) cert. denied, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Barefoot v. State*, 596 S.W.2d 875 (Tex.Cr.App.1980) cert. denied, 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981). Appellant's second point of error is overruled.

■ In appellant's sixth point of error he alleges that the trial court erred in denying his challenge for cause as to veniremember Bruner. Appellant alleges that Bruner could not consider a life sentence in a capital case and as a result demonstrated a prejudice against the law applicable to appellant and upon which he was entitled to rely. Article 35.16(c), (2), V.A.C.C.P.

The standard of review in these circumstances turns on whether the trial court abused its discretion by overruling the challenge for cause. In determining abuse of discretion, this court shall review the

---

1. Appellant also objected based on Article 35.16(a)(8), which allows for the discharge of a veniremember due to the fact "he had served on a petit jury in a former trial of the same case." There is no evidence in the record to support such an objection nor is this raised in appellant's appeal. Therefore, we need not determine its validity.

2. Appellant raises the failure of the trial court to suspend examination and discharge Nachlinger pursuant to Article 35.16(a)(10), as a part of his second point of error being discussed herein. Although Nachlinger was "unequivocal" in one particular response, when viewed in the context of the preceding examination, the record reflects that Nachlinger was anything but "unequivocal" as to whether, in his opinion, the conclusion regarding appellant's guilt would influence his verdict. Therefore, the trial court did not err in allowing further questioning.

record and determine if it supports the trial court's implied finding that the prospective juror's views would not "prevent or substantially impair the performance of his duties as a juror in accordance with his instruction and oath." *Cockrum v. State,* 758 S.W.2d 577 (Tex.Cr.App.1988) cert. denied — U.S. —, 109 S.Ct. 1358, 103 L.Ed.2d 825 (1989); *Hernandez,* 757 S.W.2d at 752.

The examination of Bruner regarding the imposition of sentence revealed that Bruner would not automatically vote "yes" when answering the punishment questions because not every murder deserved the death penalty, although she felt that a capital crime deserved the death penalty. She stated that she would wait to hear all of the evidence presented at punishment before determining the answers to the punishment questions.

During appellant's examination, Bruner was asked if she would answer the punishment questions "yes" so appellant would receive the death penalty which Bruner had stated was the only proper punishment for a capital crime. To this she responded:

> "A. I'll put it like—if I answered all of these yes because the State proved it, I would answer them all yes.... [b]ut if it is not proven to me to answer all of these yes, I'll put one no, yes, or maybe two, whatever. Right now I can't answer that, really."

On further examination by the State, Bruner reiterated that as to the punishment questions, she would not automatically answer them "yes" thereby disregarding the evidence presented. She understood her oath and stated that she would not violate it just so the death penalty could be imposed.

The court, in an effort to clear up any ambiguities in her answers regarding punishment engaged in the following discussion:

> [Trial court]
> "Q. You would still vote no? Would you still vote no knowing it would possibly be life if you voted no?
> "A. Right.
> "Q. If it was [sic] failed to be proven to you that it should be yes, could you vote no?
> "A. On the second phase—yes, on the second phase. Yes, sir, if its proven.
>
> * \* \* \* \* \*
>
> "Q. You haven't answered my question. Could you vote no if it was not proven to you that—
> "A. Yes.
> "Q. —that you can vote yes—
> "A. Yes, I could vote no.
> "Q. You would do that if the evidence did not show it to be yes?
> "A. Yes, sure, I would."

Based on the totality of the voir dire, it is evident that Bruner would listen to all of the evidence, put her personal feelings aside, and answer the punishment questions based upon that evidence. Although, she initially would have answered the questions "yes" if appellant were found guilty, after the veniremember understood the process involved she testified that she would listen to the evidence provided at the punishment phase and would answer the special issue questions on punishment accordingly. As a result, there is sufficient evidence in the record to support the trial court's determination that Bruner's beliefs would not substantially impair her abilities as a juror in light of the instructions and oath. *Hernandez v. State,* 757 S.W.2d 744 (Tex.Cr.App.1988). The trial court, therefore, did not abuse its discretion in overruling appellant's challenge for cause of veniremember Bruner. Appellant's sixth point of error is overruled.

Appellant's fourth point of error alleges that the trial court erred in sustaining the State's challenge for cause of veniremember Graves. Appellant asserts that it was not sufficiently shown that Graves would automatically answer the punishment questions in the negative. See Article 35.16(b)(1), (3), V.A.C.C.P.

■ In determining whether a potential juror was properly excused for cause due to his or her views on capital punishment, it must be determined if the trial court abused its discretion in its action regarding

the veniremember in light of the record. Only where the record supports the trial court's determination that those views would prevent or substantially impair that veniremember's duties in light of the instructions and oath, will the decision made by the trial court be undisturbed on appeal. *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980); *Hernandez v. State*, 757 S.W.2d 744 (Tex.Cr.App.1988); *Sharp v. State*, 707 S.W.2d 611 (Tex.Cr.App.1986) cert. denied, —— U.S. ——, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988).

In the present case, after having had the process explained to him, Graves stated that regardless of what the evidence proved he would answer one of the punishment questions "no" so as to not be a participant in the rendering of a death sentence. Graves, in his responses, went on to illustrate that if faced with such a decision as between the oath and his conscience, he would prefer not to take the oath rather than swear to perform a duty which he could not undertake.

During examination by appellant, Graves stated that he would follow the law in deciding the three punishment issues. Subsequently appellant was asked the following question:

"Q. Okay. I kind of keep going back, I guess, to the answers of the—if you were a Juror and asked to deliberate on the punishment on a capital crime, again, it would be in the instance where a person was convicted of a capital crime and you were talking about punishment and that being punishment set by the answers to these three questions, could you, in fact, follow your oath to listen to the evidence and decide on the evidence and weigh the evidence and then put an answer—then *go ahead and answer these three questions as the evidence indicated?*

"A. Yes, but if it meant answering yes to all three, I couldn't because I really don't feel like the death penalty is appropriate."

The mere fact that a prospective juror states that they would not, under any circumstances, answer the punishment questions in the affirmative for any reason, is not, in and of itself, sufficient to disqualify a juror. *Hernandez v. State*, 757 S.W.2d 744 (Tex.Cr.App.1988). However, after review of the record we find that it clearly reflects a "substantial likelihood that [Graves would] balk at the task or falsify an answer" and therefore the trial court committed no error in finding that Graves was unqualified to be a juror. *Id.* It is evident that Graves' views on crime and punishment would substantially impair his abilities to carry out his duties as a juror in accordance with the oath and instructions necessitated by Texas law. *Id.* at 754. Therefore, as the trial court committed no error, appellant's fourth point of error is overruled.

Appellant in his first point of error alleges that the trial court *sua sponte* excused veniremember Walker over his objections and without a challenge for cause by either party.

Although this is true, appellant mischaracterizes the trial court's action by calling it a *"sua sponte"* excusal. Cf. *Green v. State*, 764 S.W.2d 242 (Tex.Cr.App.1989); *Nichols v. State*, 754 S.W.2d 185 (Tex.Cr.App.1988) cert. denied, —— U.S. ——, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989); *Rougeau v. State*, 738 S.W.2d 651 (Tex.Cr.App.1987) cert. denied —— U.S. ——, 108 S.Ct. 1586, 99 L.Ed.2d 901 (1988); *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App.1976) cert. denied 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266 (1977). The Texas Code of Criminal Procedure provides that once a juror is sworn to answer truthfully to the questions to be asked during voir dire, "the court shall then hear and determine excuses offered by prospective jurors for not serving as a juror and if sufficient, discharge those members of the venire." Articles 35.02 and 35.03, V.A.C.C.P.

In the case before us, the State, in the course of examining Walker, inquired into several matters including whether she had responded affirmatively to a question regarding the care and custody of a child

under the age of ten years. Walker explained that the child was her grandson and that he stayed with her during the school year so he may attend school locally rather than in Grand Prairie where his mother lived.[3] She stated that he was eight years old and was currently being cared for by a friend while she was at the courthouse for this proceeding. The attorneys elicited from Walker that although her friend could care for the child during the course of the trial and although she characterized her grandson as very independent, if the trial lasted for the expected one to four weeks, she would have a difficult time keeping her mind on the trial. She stated that she wanted to do her civic duty and would like to be on a jury for a trial that would not be so lengthy. Veniremember Walker also stated that if she were a defendant in a criminal trial she would not want a juror who had her state of mind sitting on her jury panel.

The court then told Walker that if she wanted to be excused for these reasons that he would excuse her, if however, she wanted to serve on this jury then she may as she was qualified. The veniremember chose not to serve and asked to be excused. The court excused Walker, expressly pursuant to Article 35.03, over appellant's objection.

The objections raised by appellant began with an assertion that the trial court and prosecutor were seeking to exclude Walker because she was black, the same race as the appellant. That the testimony elicited by the State was intended for the sole purpose of having this veniremember excused because she was black. Additionally, appellant objected to the fact that the trial court was excusing her when there was no valid challenge for cause from either party and that the court was doing so based on her testimony which appellant felt

was not sufficient to justify her excusal. We disagree.

As previously set out, Article 35.03 provides that it shall be the court that hears and determines the sufficiency of excuses for not serving as a juror. As the legislature has placed this responsibility and discretion upon the trial judges of this state, review of their decisions on appeal shall be whether such a decision constituted an abuse of discretion. That is, does the record reasonably reflect a tendency to support the trial court's holding. Where the record so reflects, decisions as to the sufficiency of excuses and the propriety of excusals rendered by trial courts shall not be disturbed on appeal. However, we feel that the exercise of this authority by trial judges should be jealously guarded and relied upon, not by the parties, but by the judges as a last resort for excusing, what would otherwise be, a proper juror. Cf. *Nichols v. State*, 754 S.W.2d 185 (Tex. Cr.App.1988) cert. denied, —— U.S. ——, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989); *Rougeau v. State*, 738 S.W.2d 651 (Tex.Cr. App.1987) cert. denied —— U.S. ——, 108 S.Ct. 1586, 99 L.Ed.2d 901 (1988); *Moore v. State*, supra. Appellant's first point of error is overruled.

Appellant's fifth point of error alleges trial court error in overruling appellant's challenge for cause as to veniremember Kiker on the grounds that Kiker could not consider age as a mitigating factor at punishment. See Article 35.16(c)(2), V.A.C.C.P.

Appellant misconstrues the law when he characterizes Kiker's inability to consider age as a mitigating factor as a prejudice against the law applicable to the appellant's case. Although not cited in the briefs of either party, this Court has recently determined that it is not error for a trial court to overrule a challenge for cause where it is shown that a juror will not or may not give a particular variety of "miti-

---

**3.** Although it appears that the excuse raised by veniremember Walker is more along the lines of an exemption as per Section 62.106(2) of the Government Code, which states that a person qualified to serve as a juror may nonetheless establish an exemption from service if he has legal custody of a child or children younger than 10 years of age and that service requires leaving them without adequate supervision. We find that this exemption was not raised, therefore, we do not decide the applicability of the exemption, i.e., "legal custody," to grandmothers, such as veniremember Walker.

gating evidence" any consideration. *Cuevas v. State*, 742 S.W.2d 331 (Tex.Cr.App. 1987) cert. denied —— U.S. ——, 108 S.Ct. 1488, 99 L.Ed.2d 716 (1988); *Cordova v. State*, 733 S.W.2d 175 (Tex.Cr.App.1987), cert. denied —— U.S. ——, 108 S.Ct. 2915, 101 L.Ed.2d 946 (1988).

The United States Supreme Court has not yet mandated that jurors *must* give any amount of weight to any particular piece of evidence that might be offered in mitigation of punishment. *Cordova*, 733 S.W.2d at 189. What the Court has decided is that the factfinder must not be precluded or prohibited from considering any relevant evidence offered in mitigation of the punishment to be assessed, or in answering the punishment questions. *Cordova* at 189, citing *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). See also *Cuevas*, 742 S.W.2d at 345. What this means is the factfinder must be allowed to hear the evidence and to act upon it. *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980).

In Texas, this mitigating evidence is admissible at the punishment phase of a capital murder trial. See Article 37.071, V.A.C.C.P. Once admitted, the jury may then give it weight, if in their individual minds it is appropriate, when answering the questions which determine sentence. *Adams*, 448 U.S. at 46, 100 S.Ct. at 2526. However, "[t]he amount of weight that the factfinder might give any particular piece of mitigating evidence is left to 'the range of judgment and discretion' exercised by each juror." *Cordova* at 189, quoting *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980); *Cuevas*, 742 S.W.2d at 346.

During the voir dire examination of Kiker, she stated that as between a nineteen year old defendant with the maturity of a twenty-five year old versus a nineteen year old defendant with the maturity of a twelve year old, that as to punishment these people should be treated the same.

It was this inability to consider "either mental age or physical age" as a mitigating factor that appellant based his challenge. The trial court overruled appellant's challenge for cause finding that it was not a proper ground for disqualification.

 The mere fact that a prospective juror, during voir dire, acknowledges that in their mind such evidence deserves little or no weight, does not create a sustainable challenge for cause under Article 35.16. See *Cuevas*, 742 S.W.2d at 345; *Cordova*, 733 S.W.2d at 189. We find the trial court committed no error in its ruling. Appellant's fifth point of error is overruled.

Lastly, appellant's third point of error alleges the trial court erroneously granted the State's challenge for cause to veniremember Guzman. Appellant asserts that it was not clear from the record that Guzman could not read or write.[4] Article 35.-16(a)(11), V.A.C.C.P.

First, it has long been the law of this state that the statutory requirement that jurors be able to read and write meant something more than the mere ability to "write his name and nothing more." *Hernandez v. State*, 506 S.W.2d 884 (Tex.Cr.App.1974). Rather, the prospective juror should possess the ability to express their ideas in words upon paper. *Hernandez* at 887 citing *Johnson v. State*, 21 Tex.App. 368, 17 S.W. 252 (1886). This is a determination which rightfully belongs to the trial court and, absent an abuse of discretion, such a finding will not be disturbed on appeal. *Garcia v. State*, 581 S.W.2d 168 (Tex.Cr.App.1979) (vacated and remanded on other grounds, 453 U.S. 902, 101 S.Ct. 3133, 69 L.Ed.2d 988 (1981)).

---

4. The State was sustained on two separate challenges for cause of veniremember Guzman. The first regarding her ability to read and write and the second that she possessed a conscientious scruple against infliction of the death penalty as well as a bias or prejudice against the law upon which the State was entitled to rely.

Article 35.16(b)(1), (3), V.A.C.C.P. Appellant objected to both challenges. As we find the first challenge under Article 35.16(a)(11) proper, we need not address the merits of the second challenge for cause sustained by the trial court and complained of herein by appellant.

During the State's examination of prospective juror Guzman, she stated that she could read but not very well since the extent of her education went no further then the fourth grade. In regards to the juror questionaire, Guzman stated that there were words that she did not understand, she did not know how to explain the answers she wished to express, that she "did not know how to put it." Guzman testified she could write but could not spell some of the words in the answers she wanted to put down so she would just leave those questions blank.

Guzman further testified specifically as to the charge that would be given in this case that if it contained "big words" then she would not be able to read and understand the charge. When asked about the three special punishment questions she stated she could read and understand some of them but did not understand the rest. She could not pronounce nor did she know what the word "deliberate" meant or what was the import of that part of the second question regarding "continuing threat to society", although she could read at least the first part of the question. She further stated that she did not know what it meant to "do something deliberately" that she had never seen the word until she saw the charge. Veniremember Guzman further testified that although she could read the instructions, it might however take her as many as five readings before she would be able to answer one question. She stated she would probably still not understand the questions and therefore would have to have somebody explain their meaning to her. Before ruling upon the State's challenge for cause pursuant to Articles 35.16(a)(11), (b)(1), (3), the court asked Guzman the following question:

> "The Court: In talking about intentional, let me read this to you. A person acts intentionally or with intent with respect to the nature of his conduct or to a result of his conduct when it is his conscious desire to engage in the conduct or cause the result. Do you know what that means?
>
> "Veniremember Guzman: No, sir."

The court then sustained the State's challenge for cause on all grounds raised over appellant's objections.

 The record more than adequately reflects that Guzman, having obtained only a fourth grade education, could not satisfy the statutory requirement of having the ability to read and write. It is clear that she did possess rudimentary grammatical skills, however, these in and of themselves, will not satisfy the statutory requirement. *Hernandez v. State*, 506 S.W.2d 884 (Tex. Cr.App.1974). Given the fact that the trial court found Guzman's abilities to be in question, we find from the record sufficient evidence which supports the trial court's decision and therefore, the trial court did not abuse its discretion in sustaining the State's challenge for cause under Article 35.16(a)(11), V.A.C.C.P. Appellant's third point of error is overruled.

We, therefore, affirm appellant's conviction and sentence of death.

CLINTON, J., finds the majority is creating a new unsupported rule for reviewing exercise of discretion and therefore joins only the judgment of the Court.

TEAGUE, J., dissents.

DUNCAN, J., not participating.