Daryll Wayne HODGE, Appellant,

v.

STATE of Texas, Appellee.

No. 07–94–0288–CR.

Court of Appeals of Texas, Amarillo.

March 16, 1995.

Discretionary Review Refused June 21, 1995.

Warren L. Clark, Amarillo, for appellant.

Danny Hill, Dist. Atty., Bruce P. Sadler, Asst. Dist. Atty., Amarillo, for appellee.

Before DODSON, BOYD and QUINN, JJ.

DODSON, Justice.

Upon a plea of not guilty, appellant Daryll Wayne Hodge was convicted of delivery of less than 28 grams of cocaine. Upon finding the indictment's two enhancement averments true, a jury assessed his punishment at twenty-five years confinement in the Texas Department of Criminal Justice, Institutional Division. In his sole point of error, appellant contends the trial court erred in failing to grant his motion for mistrial upon learning of juror Garcia's inability to read or write the English language. We affirm.

A brief review of the relevant facts is necessary. Appellant does not attack the sufficiency of the evidence supporting his conviction. After about two hours and ten minutes of deliberation on the guilt stage of trial, a note was sent by the jury foreman to the trial judge, which read:

> Judge Lopez, we are deadlocked 11–1. One juror feels he doesn't understand the English language enough. He would like to speak to you about his feelings.

Based upon the contents of this note, appellant moved for a mistrial objecting that the juror was unqualified to render a verdict. The trial judge announced that he was going to call the juror into chambers and go over his qualifications there. The court announced that it was not denying the motion but holding it until a proper determination could be made. Defense counsel requested that he be present during the meeting in chambers. The court permitted his attendance. The court also remarked that when the potential jurors are impaneled and sworn downstairs, they are later sent to individual courtrooms.

The trial judge, the prosecutor, appellant's counsel, and juror Isaias Garcia met in the judge's chambers to assess his qualifications to serve as a juror. The meeting, and other discussions regarding Garcia outside his presence, covered about twenty-five pages of the statement of facts.

During this meeting, Garcia clearly answered questions about his length of residence in Potter County, the entity which employed him, the nature of his work, facts about his family, and facts about living in Dumas, Friona, and Mexico. He acknowledged that he completed his juror questionnaire. He had no difficulty in answering any questions from the judge in the first three pages.

Garcia expressed that he has difficulties communicating in long conversations and that he is unable to make his point. Appellant understood that he needed to understand the other people. Upon further explanation, Garcia admitted that he did not have a clear picture of what "they" tried to say. Garcia acknowledged that he did not understand some of the words used. He stated that although he went to the twelfth grade in La Paz, Chihuahua, Mexico, he did not take English in school but learned it from conver-

342

sations. Garcia admitted that although he had been a citizen of the United States for the preceding three years, he had "a problem with speaking [and] writing English clearly."

Appellant places great emphasis upon Garcia's statement that, "there is some when it comes to—you know a long conversation and stuff like that, I cannot make my point. I don't have enough length to make myself understood," in asserting Garcia's qualifications fell below the standards of article 35.16(a)(11) of the Code.[1] But the trial judge engaged in the following colloquy with Garcia:

> JUROR GARCIA: See, when I was listening to the—to the evidence there were no dates, and all of this stuff. I thought it has to be, you know, a clear picture of uh—proving.
>
> THE COURT: No, that is what you have to decide.
>
> JUROR GARCIA: Yeah. But I don't have to be 100 percent?
>
> THE COURT: Well, I mean, that is what the attorneys talked to you about this morning, reasonable doubt. It may take a lot more to convince you about something than it takes to convince me about something. We call that a threshold of—of proof.
>
> For example. Now, if it were all clear cut we wouldn't be here. I mean, there is conflicts between these attorneys and they want a jury to decide, you and the other members of the jury. I mean, those are things that you have to decide.
>
> JUROR GARCIA: Oh, okay.
>
> THE COURT: But I need to tell you that you cannot serve as a juror, you're disqualified as a juror, the law says if you cannot read or write the English language.
>
> Well, to me it seems like you can write it pretty well, and you don't have to be—you don't have to be real educated to do that.
>
> JUROR GARCIA: Okay.
>
> THE COURT: I mean, you know a little bit, that is no problem. My concern is, was there something, and again, getting back to the example of the doctor, where

there are certain—where are certain—do you know what I mean by "terminology"?

> JUROR GARCIA: (Juror nods head up and down.)
>
> THE COURT: Was there certain words used by the witnesses that you did not understand at all about what was going on this morning, or do I—
>
> JUROR GARCIA: No, I think I understood most of—
>
> THE COURT: You understood what the witnesses told you?
>
> JUROR GARCIA: Uh-huh.

Upon request by defense counsel, the trial court gave Garcia more instructions. Garcia then expressed concern that the evidence was not more "definite." During these discussions, the juror acknowledged that he understood the police officers and chemist, the only two categories of testifying witnesses at the guilt stage. The trial court instructed Garcia to decide the case solely from the evidence at trial and make his own decision beyond a reasonable doubt. The court ordered the bailiff to return Garcia to the jury room. After the trial judge interviewed Garcia in chambers, the judge determined Garcia was not disqualified and denied the motion for mistrial.

■ In reviewing this question, we are mindful that the trial judge had the opportunity to observe Garcia's personal demeanor, his ability to understand and respond to the judge, and his general ability to communicate in English. In that respect, we are bound to affirm the trial court's retention of a questionable juror if there is an adequate basis in the record to support the trial court's decision. *Accord Montoya v. State*, 810 S.W.2d 160, 167 (Tex.Cr.App.1989), *cert. denied*, 502 U.S. 961, 112 S.Ct. 426, 116 L.Ed.2d 446 (1991). In *Johnson v. State*, 773 S.W.2d 322 (Tex.Cr.App.1989), *aff'd*, — U.S. —, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993), the Court of Criminal Appeals determined that:

> [I]t has long been the law of this [S]tate that the statutory requirement that jurors be able to read and write meant something more than the mere ability to "write his name and nothing more." *Hernandez v.*

---

1. All references to articles of the Code are to articles of the Texas Code of Criminal Procedure.

*State,* 506 S.W.2d 884 (Tex.Cr.App.1974). Rather, the prospective juror should possess the ability to express their ideas in words upon paper. *Hernandez* at 887 citing *Johnson v. State,* 21 Tex.App. 368, 17 S.W. 252 (1886). *This is a determination* which rightfully *belongs to the trial court* and, *absent an abuse of discretion, such a finding will not be disturbed on appeal. Garcia v. State,* 581 S.W.2d 168 (Tex.Cr. App.1979) (vacated and remanded on other grounds, 453 U.S. 902, 101 S.Ct. 3133, 69 L.Ed.2d 988 (1981)).

*Johnson v. State,* 773 S.W.2d at 331.

■ In determining whether there was an abuse of discretion by the trial court, the question is whether the trial court acted without reference to any guiding principles or rules, or whether the action was unreasonable or arbitrary. *Lyles v. State,* 850 S.W.2d 497, 502 (Tex.Cr.App.1993); *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex.Cr.App.1990). The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

■ Article 35.16(a)(11) of the Code requires that a prospective juror have more than a very limited ability to read and write. Mere ability to read or write one's own name will not suffice. The requirement contemplates that the juror shall be able to express his ideas in writing. *Hernandez v. State,* 506 S.W.2d 884, 887 (Tex.Cr.App.1974).

Here, Garcia exhibited a greater command of the English language than merely writing his name and reading on a fourth grade level. *Cf. Allridge v. State,* 762 S.W.2d 146, 164–65 (Tex.Cr.App.1988), *cert. denied,* 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989) (upholding determination of disqualification where venireperson volunteered, "I don't know how to read or write too well," did not fill out his jury questionnaire "because I don't know how to write," and had only gone to the fourth grade and had no other English training); *Johnson v. State,* 773 S.W.2d at 332 (upholding disqualification of venireper-

son when she had only a fourth-grade education and the juror questionnaire contained words she did not understand). Further, in this instance, Garcia was able, without assistance to complete the juror questionnaire. *Cf. Montoya v. State,* 810 S.W.2d at 160–70 (no reversible error where venireperson excused because he needed the assistance of an interpreter and testified he had a limited understanding of English and became confused when the prosecutor attempted to explain the procedures); *Goodwin v. State,* 799 S.W.2d 719, 735–36 (Tex.Cr.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2913, 115 L.Ed.2d 1076 (1991) (evidence sufficient to sustain a challenge where venireperson had to have help in filling out the questionnaire because she could not write).

■ Additionally, Garcia was able to communicate verbally and answer questions propounded to him by the trial judge. Although his ability to read the charge was not tested, appellant accepted the verbal instructions given. Garcia stated he was able to understand all testifying witnesses at trial. *Accord Allridge v. State,* 850 S.W.2d 471, 484 (Tex.Cr.App.1991), *cert. denied,* ── U.S. ──, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). Appellant did not request the trial court to have Garcia read the charge or express his ideas with words on paper at trial or on a new trial motion. In that regard, appellant waived any contention that the trial court erred by not requiring Garcia to read the charge or require him to put his thoughts in writing. Tex.R.App.P. 52(a). Although Garcia expressed some difficulty in communicating with large words or for long periods of time, these matters standing alone are not sufficient to establish disqualification as a matter of law. In essence, we conclude that the evidence is sufficient to support the trial judge's determination that Garcia met the literacy requirements of article 35.16(a)(11) of the Code, and we further conclude that the trial court did not abuse its discretion in denying appellant's motion for mistrial. The appellant's sole point of error is overruled.

The trial court's judgment is affirmed.