# NO. 12-19-00347-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CHARITY IRVIN,* *APPELLANT* | *§* | *APPEAL FROM THE 114TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | *§* | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Charity Irvin appeals her conviction for possession of less than one gram of methamphetamine. In three issues, Appellant argues that the evidence is insufficient to support the trial court's judgment, the trial court erred by empaneling a jury in which one juror purportedly could not understand the English language, and the trial court improperly assessed a "time payment" fee in its judgment. We modify and affirm as modified.

### BACKGROUND

Appellant was charged by indictment with possession of less than one gram of methamphetamine and pleaded "not guilty." The matter proceeded to a jury trial. At the trial's conclusion, the jury found Appellant "guilty" as charged. Following a trial on punishment, the jury assessed Appellant's punishment at imprisonment for twenty-four months. The trial court sentenced Appellant accordingly, and this appeal followed.

### EVIDENTIARY SUFFICIENCY

In her first issue, Appellant argues that the evidence is legally insufficient to support the trial court's judgment.

## Standard of Review

The ***Jackson v. Virginia***[1] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See **Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See **Jackson***, 443 U.S. at 315–16, 99 S. Ct. at 2786–87; *see also **Escobedo v. State***, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; *see also **Johnson v. State***, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; ***Johnson***, 871 S.W.2d at 186. A jury is free to believe all or any part of a witness's testimony or disbelieve all or any part of that testimony. *See **Lee v. State***, 176 S.W.3d 452, 458 (Tex. App.–Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See **Tibbs v. Florida***, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. ***Rodriguez v. State***, 521 S.W.3d 822, 827 (Tex. App.–Houston [1st Dist.] 2017, no pet.) (citing ***Sorrells v. State***, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011)). Each fact need not point directly and independently to the guilt of the appellant, provided that the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See **Hooper v. State***, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to draw multiple reasonable inferences so long as each inference is supported by the evidence presented at trial. ***Id.*** at 15. Juries are not permitted to reach conclusions based on mere speculation or factually unsupported inferences or presumptions. ***Id.*** An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. ***Id.*** at 16.

---

[1] 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

**Discussion**

To support Appellant's conviction for possession of methamphetamine, the State was required to prove that she (1) exercised control, management, or care over the substance and (2) knew the matter possessed was contraband. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *see also* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6) (West Supp. 2019), 481.115(a), (b) (West 2017). A person acts knowingly, or with knowledge, with respect to the nature of her conduct or to circumstances surrounding her conduct when she is aware of the nature of her conduct or that such circumstances exist. *See* TEX. PENAL CODE ANN. § 6.03(b) (West 2011). The State must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. *Poindexter*, 153 S.W.3d at 406. When the accused is not in exclusive possession of the place where the substance is found, we cannot conclude that she had knowledge of and control over the contraband unless there are additional independent facts and circumstances which link the accused to the contraband. *Id.* Links that may circumstantially establish the sufficiency of the evidence to prove that a defendant had knowing "possession" of contraband include the following: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *See Evans v. State*, 202 S.W.3d

3

158, 162 n.12 (Tex. Crim. App. 2006). It is not the number of links that is dispositive, but rather the logical force of all of the evidence, both direct and circumstantial. **_Id._** Ultimately, the question of whether the evidence is sufficient to link the appellant to the contraband must be answered on a case by case basis. *See **Whitworth v. State**, 808 S.W.2d 566, 569 (Tex. App.–Austin 1991, pet. ref'd).*

In the instant case, Smith County Sheriff's Deputy Kevin Londoff testified that on May 20, 2018, he initiated a traffic stop on a vehicle driving in the southwest portion of Smith County, Texas based on the driver's failure to display a registration sticker or a front license plate. Londoff made contact with the driver and Appellant, the passenger. During this time, Londoff asked the driver for consent to search the vehicle, which she gave him. Londoff stated that while he searched the passenger side interior of the vehicle, he discovered several handbags. According to Londoff, Appellant told him prior to his search of the vehicle that these handbags belonged to her. Londoff testified that in one of these handbags, he discovered a cut, red straw in which there was a "real fine . . . powder-like substance." Londoff further testified that he told Appellant that the substance he observed in the red straw appeared to be cocaine, to which Appellant responded, "It's not cocaine, it's meth[.]" Londoff's body camera video depicting his interaction between Appellant and the vehicle's driver and his search of the vehicle was admitted into evidence. Tyler Crime Lab Forensic Scientist Karen Collins testified that the substance Londoff discovered in the red straw was methamphetamine, which weighed 0.01 grams.

We next consider whether the evidence links Appellant to the contraband. *See **Poindexter**, 153 S.W.3d at 406.* We begin by noting that Appellant was not under the influence of narcotics, nor did she possess other contraband or narcotics when arrested. She did not attempt to flee and made no furtive gestures. There was no evidence that Londoff detected the odor of contraband, nor was other contraband or drug paraphernalia located during his search of the vehicle. Further, it is undisputed that Appellant did not own or have the right to possess the vehicle in question and did not possess a large amount of cash at the time of her arrest.

On the other hand, Appellant was present when Londoff conducted his search of the vehicle. And while the contraband was not in plain view and the handbag where the contraband was found amounted to an enclosed space, Appellant told Londoff before he commenced his search that the handbags on the passenger's side floorboard belonged to her. Furthermore, the straw containing the methamphetamine was discovered in a handbag in the passenger's side

footwell in front of Appellant's seated position and, thus, was accessible by Appellant. Moreover, Appellant made an incriminating statement, which also indicated her consciousness of guilt, when she corrected Londoff's statement that the substance in the straw was cocaine by informing him that it was, in fact, methamphetamine.

Appellant argues that the evidence supports only a conclusion that she merely was in the presence of contraband, which does not amount to evidence of possession. But in making this argument, Appellant wholly ignores and omits any reference to the evidence that she (1) stated to Londoff that she owned the handbag in which the contraband was discovered and (2) demonstrated knowledge of what the contraband was when she corrected Londoff's statement that he believed the substance to be cocaine.[2]

Having examined the evidence in the light most favorable to the verdict, we conclude that the jury reasonably could have determined beyond a reasonable doubt that Appellant exercised control, management, or care over the methamphetamine at issue, which she knew to be contraband. *See id.* at 405. Therefore, we hold that the evidence is legally sufficient to support the trial court's judgment. Appellant's first issue is overruled.


### JUROR QUALIFICATION

In her second issue, Appellant argues that the trial court abused its discretion by proceeding to trial over her objection and motion to disqualify a newly sworn and empaneled juror, who advised the court of her concerns about being able to communicate in English. Appellant contends that the trial court's abuse of discretion resulted in her being tried by an eleven-member jury in violation of her constitutional rights.

**Standard of Review and Governing Law**

The determination as to whether a juror is disabled is within the discretion of the trial court. **Brooks v. State**, 990 S.W.2d 278, 286 (Tex. Crim. App. 1999). Absent an abuse of that discretion, no reversible error will be found. **Id.** A trial court does not abuse its discretion if its ruling falls within the "zone of reasonable disagreement." **Montgomery v. State**, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). We review with considerable deference because the trial

---

[2] *See* **In re Lerma**, 144 S.W.3d 21, 27 (Tex. App.–El Paso 2004) (orig. proceeding) (discussing attorney's duty regarding portrayal of record on appeal).

judge is in the best position to evaluate a veniremember's demeanor and responses. *Cf. **Gardner v. State***, 306 S.W.3d 274, 295–96 (Tex. Crim. App. 2009).

Texas Code of Criminal Procedure, Article 35.16(a)(11) requires that a prospective juror have more than a very limited ability to read and write. TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(11) (West 2006). Mere ability to read or write one's own name will not suffice. ***Hodge v. State***, 896 S.W.2d 340, 343 (Tex. App.–Amarillo 1995, pet. ref'd). The requirement contemplates that the juror shall be able to express her ideas in writing. *Id.* Encompassed within Article 35.16(a)(11) is that a juror may be challenged based on her inability to understand English. *See **Stillwell v. State***, 466 S.W.3d 908, 912 (Tex. App.–Fort Worth 2015, no pet.).

## Discussion

In the instant case, after the jury was empaneled and sworn, a juror brought her concerns over her ability to communicate in English with others to the court's attention, and the following exchange took place:

> Judge, I'm so glad that - - you know in the Philippines, our English language is our second language.
>
> . . . .
>
> And I - - I understand in English. But when he talks about 100 percent, you know it's just like I don't really get it. I mean, I'm just, oh, Lord. I'm kind of nervous. Oh, my goodness, why are they going to pick me . . . .

Thereafter, the following discussion was undertaken among the trial court, trial counsel, and the juror:

> The Court: Did you think about bringing that up before the Court called your name as a juror? Like when we were asking the questions and everything, did you think about saying, "You know what, I'm not sure I speak English well enough to be on the jury"?
>
> Juror: I'm sorry, Judge, I supposed to -- I supposed to get up and say something -- say something about that.
>
> The Court: Well, when you were downstairs, they offered you a chance to be excused because you don't read, write, or understand English well enough. Did you not understand that?
>
> Juror: I understand it. But it's kind of too late for me --
>
> The Court: It's what for you?
>
> [Juror]: It's kind of too late for me to say that because I thought they were talking about those health issues. But then I said, oh, my gosh, why I didn't, you know.

6

The Court: Well, you've understood everything I've said, right?

Juror: Yes.

The Court: Did you understand the questioning from Ms. Anderson?

Juror: I understand.

The Court: Did you answer the questions truthfully with Ms. Anderson?

Juror: Yes.

The Court: Did you understand Mr. Adams'[s] questions?

Juror: Yes.

The Court: Did you answer those questions truthfully?

Juror: Yes.

The Court: Are you understanding what I'm saying?

Juror: I understand.

The Court: And are you -- what makes you think you're not going to be able to understand?

Juror: Maybe if there is a questions come up, but I don't really, you know, understand, you know. And I don't know how I say it and I don't know how to answer it.

The Court: Any questions from the State?

[Prosecuting Attorney]: Ma'am, you said you grew up in the Philippines?

Juror: Yes.

[Prosecuting Attorney]: And English is your second language?

Juror: Yes.

[Prosecuting Attorney]: And when you were growing up in the Philippines, did you learn English -- did they teach English in school in the Philippines?

Juror: Yes.

[Prosecuting Attorney]: How long have you at least been familiar with the English -- English language?

Juror: From -- from since when I was elementary up through college.

[Prosecuting Attorney]: Okay. You're specifically worried about that -- and maybe I misunderstood you -- that if something happens during the trial that you -- you don't fully understand, you won't be able to ask anyone or know how to ask about whatever it was that you didn't understand?

7

Juror: I mean, when -- when I answer the question and I don't know if -- if -- example, if you understand the way I answer your question.

[Prosecuting Attorney]: Okay. So are you more concerned with whether or not someone can understand you or whether or not you can understand the speaker?

Juror: Someone if -- can understand me.

[Prosecuting Attorney]: Okay.

Juror: Kind of understand.

[Prosecuting Attorney]: Because it sounds like you understand and you speak English pretty well.

Juror: I'm just trying.

[Prosecuting Attorney]: You -- and what I mean by that is, it seems to me that we are -- we are able to communicate with one another --

Juror: (Nods head affirmatively).

[Prosecuting Attorney]: -- and understand each other. Would you agree with that?

Juror: I agree with that.

[Prosecuting Attorney]: I don't have any further questions, Your Honor. I --

The Court: Mr. Adams, --

. . . .

-- do you have any questions?

[Defense Counsel]: Ma'am, are you worried about not being able to understand things that are said during a trial that have to do with legal terms?

JUROR: Yes.

[Defense Counsel]: Okay. Do you have any idea what that might be?

Juror: What idea you're talking about? What idea are you talking about? I mean . . . [.]

[Defense Counsel]: Well, I guess, if there's -- if there's a -- if there's a legal term that might come up during the trial that you wouldn't be familiar with, then you wouldn't know what it is, right?

Juror: Yes.

[Defense Counsel]: Okay.

Thereafter, the trial court and the juror had the following discussion:

The Court: [Y]ou seem like you understand everything I'm saying to you.

8

Juror: (Nods head affirmatively.)

The Court: Yes?

Juror: Yes.

The Court: And I'm not sure what you're afraid you are not going to understand. I understand you think your speaking might not be understood as well, but you certainly can make yourself understood. In a jury deliberation context is the only time you would be speaking, and you could certainly explain to the jurors with other words. You wouldn't be required to speak in an open courtroom about things. So the only part I would have -- be concerned about is if you wouldn't understand things that are discussed in the evidence. But that's just average people coming in and saying what they saw and what they did. They're really not a lot of -- I'm trying to think if there are any legal terms usually in, you know, evidence presentation. And maybe, but I don't know. Is that what you're concerned about? I don't understand exactly what you're concerned about not getting. I'm not understanding.

Juror: I said a while ago if I'm -- if I am answering the question, if I don't say it right.

The Court: Well, right. But that's what I'm saying. You won't be doing any talking.

Juror: Okay.

The Court: That's what I'm trying to understand. If it's your speaking to me or to other people or us speaking to you. If it's us -- are you concerned about not understanding things that people tell you or that you hear? Are you concerned about that?

Juror: Yes.

The Court: Okay. So what kind of things are you concerned about that you won't understand?

Juror: Just like -- just like when we -- you know, the presentation a while ago, you know, there are -- there are questions that I don't really get it.

The Court: Okay. Okay. Your primary concern is expressing your thoughts in English, but you do have some concerns also about understanding what is spoken in your presence?

Juror: Yes, Judge.

The juror then explained to the trial court that she attended elementary and secondary schools as well as college in the Philippines and that the classes were taught in English. She further related to the trial court that she completed her juror questionnaire on her own and works as a preschool teacher where she reads to children.

In *Hodge v. State*, the court reviewed a trial court's denial of a motion for mistrial based on a juror's expression to the trial court during deliberations about his difficulty understanding English. *See* 896 S.W.2d at 341. The trial court, trial counsel, and the juror met in chambers to discuss the juror's qualifications to serve. *Id.* During this meeting, the juror clearly answered questions about his length of residence in the county, the entity which employed him, the nature

9

of his work, facts about his family, and facts about living in Texas and Mexico. *See id.* He acknowledged that he completed his juror questionnaire, and he had no difficulty in answering any questions from the judge in the first three pages. *Id.* But he expressed that he had difficulties communicating in long conversations and that he is unable to make his point, admitted that he did not have a clear picture of what "they" tried to say, and acknowledged that he did not understand some of the words used. *Id.* He stated that although he went to the twelfth grade in La Paz, Chihuahua, Mexico, he did not take English in school but learned it from conversations. *Id.* Lastly, the juror admitted that although he had been a citizen of the United States for the preceding three years, he had "a problem with speaking [and] writing English clearly." *Id.* at 342. Following this discussion, the trial court denied the appellant's motion for mistrial. *Id.*

In concluding that the trial court did not abuse its discretion in finding the juror to be qualified to serve, the court of appeals reasoned that the juror exhibited a greater command of the English language than merely writing his name and reading on a fourth grade level. *Id.* at 343 (citing *cf. Johnson v. State*, 773 S.W.2d 322, 331–32 (Tex. Crim. App. 1989) (upholding disqualification of venireperson when she had only a fourth-grade education and the juror questionnaire contained words she did not understand); *Allridge v. State*, 762 S.W.2d 146, 164–65 (Tex. Crim. App. 1988) (upholding determination of disqualification where venireperson volunteered, "I don't know how to read or write too well," did not fill out his jury questionnaire "because I don't know how to write," and only had gone to the fourth grade and had no other English training)). The court further noted that the juror was able, without assistance, to complete the juror questionnaire. *See Hodge*, 896 S.W.2d at 343 (citing *cf. Montoya v. State*, 810 S.W.2d 160, 169–70 (Tex. Crim. App. 1989) (no reversible error where venireperson excused because he needed the assistance of interpreter and testified he had limited understanding of English and became confused when the prosecutor attempted to explain the procedures); *Goodwin v. State*, 799 S.W.2d 719, 735–36 (Tex. Crim. App. 1990) (evidence sufficient to sustain a challenge where venireperson had to have help in filling out questionnaire because she could not write)). Lastly, the court emphasized that the juror was able to communicate verbally and answer questions propounded to him by the trial judge. *See Hodge,* 896 S.W.2d at 343. And although it acknowledged that the juror expressed some difficulty in

10

communicating with large words or for long periods of time, it determined that these matters standing alone are not sufficient to establish disqualification as a matter of law. *See id.* at 343.

In this case, the juror communicated at length in English with the trial court, and it later was determined that she completed her elementary, secondary, and college education in the Philippines in classes taught in English. The juror further confirmed that she understood what was said during voir dire, that she effectively could communicate in English, and that she completed the juror questionnaire herself. She also conveyed that she works as a preschool teacher where she reads to children. Based on the foregoing, giving considerable deference to the trial court, which was in the best position to evaluate the juror's demeanor and responses, we conclude that the trial court's ruling that the juror was qualified to serve was not outside the zone of reasonable disagreement. *See Montgomery*, 810 S.W.2d at 391; *see also Hodge*, 896 S.W.2d at 343; *Cf. Gardner*, 306 S.W.3d at 295–96. Therefore, we hold that the trial court did not abuse its discretion in overruling Appellant's motion to disqualify the juror. Appellant's second issue is overruled.

## COURT COSTS

In her third issue, Appellant argues that the trial court erred in assessing a "time payment" fee previously authorized by Texas Local Government Code, Section 133.103 in its judgment.[3] The State concedes that this fee is facially unconstitutional. We agree. *See Salinas v. State*, 523 S.W.3d 103, 112 n. 54 (Tex. Crim. App. 2017); *see also Ovalle v. State*, 592 S.W.3d 615, 618 n.1 (Tex. App.—Dallas 2020, pet. filed); *Simmons v. State*, 590 S.W.3d 702, 712 (Tex. App.–Waco 2019, no pet.); *Dulin v. State*, 583 S.W.3d 351, 353 (Tex. App.–Austin 2019, no pet.); *Johnson v. State*, 573 S.W.3d 328, 340 (Tex. App.–Houston [14th Dist.] 2019, no pet.) (concluding that, because the portions of time payment fee authorized by subsections Section 133.103(b) and (d) were deposited in general revenue and were not sufficiently allocated

---

[3] The Texas Legislature passed legislation, effective January 1, 2020, that transfers Texas Local Government Code, Section 133.103 to Texas Code of Criminal Procedure, Article 102.030 and revises the statute to provide that all of the fees collected under the section are "to be used for the purpose of improving the collection of outstanding court costs, fines, reimbursement fees, or restitution or improving the efficiency of the administration of justice in the county or municipality." *See* Act of May 23, 2019, 86th Leg., R.S., S.B. 346, § 2.54, 2019 Tex. Sess. Law Serv. Ch. 1352. The changes apply only to a cost, fee, or fine assessed on a conviction for an offense committed on or after the effective date of the Act. *Id.* § 5.01. Because the offense in this case was committed before January 1, 2020, the former law applies. *See Ovalle v. State*, 592 S.W.3d 615, 617 n.1 (Tex. App.–Dallas 2020, pet. filed).

to administration of criminal justice system, those subsections were facially unconstitutional as violating the separation-of-powers provision of Texas Constitution).

Here, the judgment of conviction reflects that the trial court assessed $289.00 in court costs. The judgment includes a document identified as "Attachment A Order to Withdraw Funds," which states that Appellant has incurred "[c]ourt costs, fees and/or fines and/or restitution" in the amount of $289.00. The certified bill of costs itemizes the court costs imposed, which total $289.00 with a $289.00 balance remaining. The bill of costs indicates that the $25.00 time payment fee will be assessed if any part of the court costs is paid on or after the 31st day after the date the judgment assessing the court costs is entered. *But see* TEX. LOC. GOV'T CODE ANN. § 133.1103(c) (West Supp. 2019) (treasurer shall deposit ten percent of fees collected under this section in general fund of county or municipality for purpose of improving efficiency of administration of justice in county or municipality).

The proper remedy when a trial court erroneously includes amounts as court costs is to modify the judgment to delete erroneous amounts. *See **Sturdivant v. State***, 445 S.W.3d 435, 443 (Tex. App.–Houston [1st Dist.] 2014, pet. ref'd). Accordingly, we will modify the trial court's judgment and Attachment A to reflect the appropriate assessment of court costs that do not include the time payment fee. *See **Ovalle***, 592 S.W.3d at 618. Appellant's third issue is sustained.

<u>CONCLUSION</u>

Having sustained Appellant's third issue, we ***modify*** the trial court's judgment to reflect that the amount of court costs is $266.50. *See* TEX. R. APP. P. 43.2(b). We also ***modify*** Attachment A to state that the total amount of "court costs, fees and/or fines and/or restitution" is $266.50. *See **id***. Having overruled Appellant's first and second issues, we ***affirm*** the trial court's judgment ***as modified***.

<u>JAMES T. WORTHEN</u>
Chief Justice

Opinion delivered September 9, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

12



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 9, 2020**

**NO. 12-19-00347-CR**

**CHARITY IRVIN,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 114-1520-18)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that the judgment of the trial court below should be modified and as modified, affirmed.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below be **modified** to reflect that the amount of court costs is $266.50. It is further ORDERED, ADJUDGED and DECRED that Attachment A is **modified** to state that the total amount of "court costs, fees and/or fines and/or restitution" is $266.50, and as **modified**, the judgment of the trial court is **affirmed**; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*