**Robert Allen MILLS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–86–01138–CR.**

Court of Appeals of Texas, Dallas.

Dec. 18, 1987.

**832**

James M. Murphy, Dallas, for appellant.

Tom O'Connell, McKinney, for appellee.

Before DEVANY, McCLUNG and HECHT, JJ.

HECHT, Justice.

A jury convicted Robert Allen Mills of reckless injury to a child and assessed punishment at ten years' imprisonment. We affirm the judgment of the district court.

**I**

Mills complains in his first point of error that the evidence is insufficient for conviction. This is a circumstantial evidence case. As a rule, evidence suffices for conviction if a rational trier of fact, taking the evidence most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 n. 12, 99 S.Ct. 2781, 2789 n. 12, 61 L.Ed.2d 560 (1979). Additionally, circumstantial evidence is sufficient for conviction if it excludes every reasonable hypothesis except guilt of the defendant. *Moore v. State*, 640 S.W.2d 300, 302 (Tex.Crim.App.1982).

In a circumstantial evidence case, the State need not present evidence excluding every conceivable hypothesis except that of defendant's guilt, it need only present evidence excluding every reasonable hypothesis....

Each fact need not point directly and independently to the guilt of the accused, as the cumulative effect of all the incriminating facts may be sufficient to support the conviction.... Furthermore, every circumstantial evidence case must necessarily be tested by its own facts to determine the sufficiency of the evidence to support the conviction....

*Hooker v. State*, 621 S.W.2d 597 (Tex.Crim. App.1980) (citations omitted). With these principles in mind, we turn to the evidence.

P\_\_\_ R\_\_\_ met Mills and about a month later, moved into his apartment with her 15-month-old daughter, C\_\_\_ R\_\_\_. While P\_\_\_ R\_\_\_ worked, Mills would stay with the baby. P\_\_\_ R\_\_\_ noticed that her daughter seemed to be bruising easily and asked Mills about it, but Mills gave explanations of the bruises, and P\_\_\_ R\_\_\_ believed him. At one point P\_\_\_ R\_\_\_ noticed a cigarette burn on her daughter's buttocks. Mills' explanation was that she had sat on an ashtray.

One afternoon about three months after P\_\_\_ R\_\_\_ moved in with Mills, Mills called his mother when she arrived home from work and asked her to look at C\_\_\_ R\_\_\_. The child was obviously badly burned, and Mills' mother insisted that they take her to the hospital immediately. Mills then telephoned P\_\_\_ R\_\_\_ at work to tell her that her daughter had been burned and that they were taking her to the hospital. A short time later Mills and his mother admitted the child to the hospital with life-threatening second and third degree burns over 20–30% of her body, specifically, her lower trunk, legs and feet.

Meanwhile, P\_\_\_ R\_\_\_ left work and went to Mills' apartment. Finding no one there, she returned to work where she re-

mained until Mills' mother picked her up and took her to the hospital. When they arrived, C____ R____ was being wrapped in ice packs. P____ R____ stated that the child seemed burned from the waist down, and her skin looked like "raw hamburger meat with blisters."

C____ R____ remained in the hospital three weeks, two of which she was in intensive care. She underwent extensive surgery and skin grafts. Her injuries and scars are permanent.

One physician, the director of the hospital burn unit, testified for the State that without any doubt C____ R____'s burns were caused by forced, not accidental, immersion in hot liquid, such as hot water in a bathtub. He based his opinion on the distinct margin between the burned and unburned areas on C____ R____'s body, the absence of splash marks which would result from falling suddenly and unintentionally into a hot liquid, and the absence of burns on her buttocks indicating that she had been held down against a surface which was not as hot as the liquid it contained, such as the bottom of a bathtub. A second physician called by the State, who treated C____ R____ when she was first brought into the hospital, agreed and added that C____ R____ appeared to be afraid of men. A third physician, however, the head of the hospital burn unit, testified for the defense that although C____ R____'s injuries could have been intentionally inflicted, they were probably accidental.

Mills testified at trial and gave the following explanation of how C____ R____ was burned. Early in the afternoon, Mills said, he gave the child a bath in approximately three inches of warm water. After drying her off, he took her into the living room and laid her on the couch, and then decided that he would take a bath too. He turned on the hot water and left it running while he got clothes for the baby from the closet. Mills became concerned about the child and returned to the living room only to find that she was no longer on the couch. He found the child, he said, in the tub, kicking and splashing around, trying to get out of the steaming water. Mills

testified that C____ R____ never cried out. Mills said he took the baby out of the tub, wrapped her in a sheet, and waited for his mother, who lived in the same apartment complex, to arrive home from work.

Mills was charged with "intentionally and knowingly engag[ing] in conduct that caused serious bodily injury and disfigurement to [C____ R____], a child younger than fourteen (14) years of age, by immersing [her] into a hot liquid". Mills was convicted, however, not of acting intentionally and knowingly, but of acting recklessly, that is, with a lesser culpable mental state. "Culpable mental states are classified according to relative degrees, from highest to lowest, as follows: (1) intentional; (2) knowing; (3) reckless; (4) criminal negligence." Tex.Penal Code Ann. § 6.02(d) (Vernon 1974). Reckless injury to a child is a lesser included offense in relation to intentional or knowing injury to a child. *See* Tex.Code Crim.Proc.Ann. art. 37.09(3) (Vernon 1981).

Mills argues that although the evidence was sufficient to convict him of acting intentionally, knowingly or negligently, it was insufficient to convict him of acting recklessly. In other words, Mills argues that the State either proved too much or too little, but not just enough. Interesting as this argument is, it is flawed both legally and logically.

Legally, "[p]roof of a higher degree of culpability than that charged constitutes proof of the culpability charged." Tex.Penal Code Ann. § 6.02(e) (Vernon 1974). By this rule, had Mills been charged with acting recklessly, evidence which Mills admits is sufficient to prove that he acted intentionally and knowingly would prove he acted recklessly. Although he was charged with the more culpable mental states here, proof of those states is sufficient to prove the lesser state of recklessness.

■ Logically, the evidence that Mills acted intentionally or knowingly is not inconsistent with a finding that he acted recklessly.

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his con-

duct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature or degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex.Penal Code Ann. § 6.03(c) (Vernon 1974). The jury could have found that Mills knew that C____ R____ risked being severely burned if he placed her in the tub of hot water but consciously disregarded that risk in a gross deviation from ordinary care. *See Hooker v. State,* 621 S.W.2d 597 (Tex.Crim.App.1980). The possibility that C____ R____ climbed back in the bathtub herself when Mills was not watching, and was splashing around trying to get out, but not crying, when Mills found her, is unreasonable in view of the conclusive evidence as to the burn pattern on her body.

Mills also appears to argue that the trial court erred in instructing the jury as to the lesser included offense of reckless injury to a child because the evidence was insufficient to support such a charge. It is not error to submit a charge authorizing conviction of the lesser included offense upon a finding of a lower culpable mental state of recklessness. *See Little v. State,* 659 S.W.2d 425 (Tex.Crim.App.1983).

Mills' first point of error is overruled.

II

During trial Mills caused a subpoena duces tecum to be issued to the director of the hospital burn unit, testifying for the State, to produce all medical references upon which he based any opinion or reliance in his testimony, and which he considered to be authoritative in the diagnosis or prognosis of thermal burn injuries. The trial court refused to enforce this subpoena. In his second point of error Mills contends that consequently he was denied his constitutional rights to confront and cross-examine witnesses.

■ Ruling on a discovery motion, in the present constitutional context, is committed to the sound discretion of the trial court, and denial of discovery is not reversible unless "the evidence sought is material to the *defense* of the accused." *Quinones v. State,* 592 S.W.2d 933, 940–941 (Tex.Crim. App.), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980) (emphasis supplied). Generally, a denial of discovery is not an abuse of discretion and reversible error "if the defendant was not denied access to exculpatory or mitigating evidence which would have affected the outcome of the trial in his favor." *Id.* at 941. Mills has failed to show how the subpoenaed references are exculpatory or mitigating, or otherwise material to his defense. Indeed, one would expect that medical references upon which a physician testifying for the State relied would tend to convict the defendant and contradict the defense. Without making any contrary showing, Mills was not entitled to the materials sought, and the trial court did not abuse its discretion in refusing to enforce the subpoena. "[T]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense...." *Id.* (quoting *United States v. Agurs,* 427 U.S. 97, 109–110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976). Mills cites no authority to the contrary.

Before the State's expert testified, Mills was allowed to question him extensively on voir dire regarding the facts and data upon which he based his opinion. *Mills could have reviewed on his own available medical references similar to those he sought to discover. Instead, Mills simply tried to force the State's expert witness to do research for the defense.*

Mills' second point of error is overruled.

III

The indictment against Mills was returned to the 219th Judicial District Court of Collin County, Texas. The case was tried, however, in the 296th Judicial District Court of Collin County. No transfer order appears of record. Article 4.16 of

the Texas Code of Criminal Procedure provides: "When two or more courts have concurrent jurisdiction of any criminal offense, the court in which the indictment or a complaint shall first be filed shall retain jurisdiction...." Based upon this provision, Mills contends in his third point of error that the trial court lacked jurisdiction to render judgment against him.

Article 4.16 is intended to "prevent any confusion or contention between different courts having concurrent jurisdiction and seeking to exercise jurisdiction, and not to shield an accused from prosecution." *Flores v. State*, 487 S.W.2d 122, 125 (Tex.Crim.App.1972). The statute will not render the proceedings in the second court void. *Ex parte Lohse*, 157 Tex.Cr.R. 488, 250 S.W.2d 215 (1952). A defendant who does not interpose a plea to the jurisdiction may waive the right to question jurisdiction under article 4.16. *See Flores*, 487 S.W.2d at 125. Mills filed no formal plea to the jurisdiction. Therefore, he has waived the challenge he now attempts to make. Absent an objection, the proceedings in the 296th District Court were proper even though no transfer order appears of record.

Mills' third point of error is overruled.