**MODIFY and AFFIRM; and Opinion Filed March 16, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00192-CR

**RITO DUENAS A/K/A RITO DUENAS-QUINTERO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F-1354251-Y**

## MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Fillmore

A jury convicted Rito Duenas a/k/a Rito Duenas-Quintero[1] (Duenas) of indecency with a

child and assessed punishment of eight years' imprisonment. In four points of error, Duenas

asserts the indictment was improperly amended and the evidence is insufficient to support a

conviction on the original indicted offense of continuous sexual abuse of a child; the evidence is

insufficient to support the conviction for indecency with a child; the trial court lacked

jurisdiction to hear the case and render a judgment because the case was not transferred to its

docket; and the trial court incorrectly instructed the jury on parole eligibility. On our own

motion, we modify the trial court's judgment to reflect that Duenas was convicted of indecency

---

[1] Appellant was indicted as Rito Duenas and the judgment of conviction names him as Rito Duenas. However, during trial appellant testified his name was Rito Duenas-Quintero, and he filed a notice of appeal as Rito Duenas-Quintero.

with a child, a second-degree felony, pursuant to section 21.11 of the penal code. As modified, we affirm the trial court's judgment.

## Background

C.H., who was eleven years old at the time of trial, testified she lives with her grandmother, her father, her stepmother, and five younger siblings. These siblings include two full sisters, a half-sister, a stepsister, and a stepbrother. Duenas, C.H.'s uncle, also lived in the house for a period of time.[2] Duenas traveled between Dallas and Laredo, purchasing and selling items. According to C.H., Duenas was a "really fun" uncle. When he went on trips, he would bring things home to the children. He also offered to take the children to McDonald's and Chuck E. Cheese restaurants.

C.H. testified that, when she was in the second grade, Duenas called her out of the room where she was playing with the other children and gave her a coloring book and some Crayons. It was C.H.'s first coloring book, and she and Duenas began coloring the first page. As C.H. was coloring, Duenas separated her legs and touched her "chocho" on the outside of her clothes. On a drawing, C.H. identified her "chocho" as her vagina. According to C.H., the touch "kind of tickled" and made her uncomfortable. C.H. testified that Duenas touched her the same way a number of times, including ten times in the second grade. Duenas told C.H. not to tell anybody about his touching her and, after he touched her, would give her money, "like maybe a dollar."

At some point, C.H. told her younger stepsister, K.P., that Duenas was touching her. K.P. told C.H. that what Duenas was doing was "something bad" and C.H. should tell either her dad or her stepmother about it. C.H. asked K.P. to keep what was happening secret. K.P. then suggested that C.H. put the money Duenas gave her into a jar so they would be able to show how

---

[2] The evidence reflected that Duenas is actually C.H.'s grandmother's brother, making him her great-uncle.

many times he touched her. K.P. also started staying close to C.H. when Duenas was around and tried to place herself between C.H. and Duenas.

K.P., who was ten years old at the time of trial, confirmed that C.H. told her that something was happening to her. K.P. told C.H. to stay away from her uncle. She also stayed with C.H. whenever Duenas was present.

C.H. testified that Duenas continued to touch her until spring break during her fourth grade year. C.H., her father, her stepmother, and her siblings went camping over spring break. On the last night of the trip, the family was sitting around the fire when C.H.'s stepmother asked the children if they had "any troubles or things that bother us." When it was her turn to speak, C.H. asked to speak to her stepmother away from the rest of the family. C.H. told her stepmother that Duenas was touching her and it made her uncomfortable.

C.H.'s stepmother, A.S., confirmed the family was sitting around the fire on a camping trip when C.H. said she wanted to tell A.S. something. From the look on C.H.'s face, A.S. could tell that it was something serious. A.S. and C.H. stepped away from the fire, and C.H. said that Duenas was touching her on her "chochito," which is a word A.S. and the children use for the "female part." A.S. put C.H.'s hand on her leg and asked C.H. to show her how Duenas would touch her. A.S. demonstrated for the jury that C.H. made a squeezing motion with her hand. A.S. asked C.H. what Duenas did while he was touching her, and C.H. responded that he "also touched his chochito." A.S. confirmed that, although C.H. did not always get an allowance, she "every day" had money.

Duenas testified he was sixty-two years old and was C.H.'s great-uncle. He supported himself by buying items in Dallas to sell in Mexico. When he was in Dallas, he stayed with his sister. His nephew, C.H.'s father, and his nephew's family also lived in the house. Duenas denied having any sexual contact with C.H. He testified C.H. had seen a recording that her

father and stepmother had made that worried her. Duenas's brother and sister-in-law both testified they had never seen anything in Duenas's behavior around children that caused them any concern.

The jury found Duenas guilty of indecency with a child and assessed punishment of eight years' imprisonment.

## Jurisdiction

In his third point of error, Duenas contends Criminal District Court No. 7, in which the case was adjudicated, lacked jurisdiction to hear the case and render judgment because the case was not properly transferred to the court's docket. A defendant has the right to be tried in a court with jurisdiction over him and the subject-matter of the case. *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002). Jurisdiction over felony cases, such as this case, lies in the district or criminal district court where the indictment is first filed. TEX. CODE CRIM. PROC. ANN. art. 4.05, 4.16 (West 2005).

In counties having two or more district courts, the judges of the courts may adopt rules governing the filing, numbering, and assignment of cases for trial, and the distribution of the courts' work as they consider necessary or desirable for the conduct of the business of the courts. TEX. GOV'T CODE ANN. § 24.024 (West Supp. 2014); *see also id.* § 74.093(a)–(b) (West 2013) (addressing adoption of local rules of administration to provide, in part, for assignment, docketing, transfer, and hearing of all cases). Thus, while a specific district court may impanel a grand jury, it does not necessarily follow that all cases returned by that grand jury are assigned to that court. *Bourque v. State*, 156 S.W.3d 675, 678 (Tex. App.—Dallas 2005, pet. ref'd).

In this case, a grand jury was impaneled by the 204th Judicial District Court, but the indictment was returned to the Criminal District Court No. 1. The Criminal District Court No. 1 transferred the case to the 363rd Judicial District Court, which transferred the case to Criminal

–4–

District Court No. 7 where the case was adjudicated. Duenas argues that, because the record does not include a transfer order from the 204th Judicial District Court to the Criminal District Court No. 1, the trial court never obtained jurisdiction over the case and the judgment is therefore void. No transfer order, however, is required where one court empanels the grand jury that returns the indictment in the case, but the indictment is filed in another court. *Id.* Therefore, a transfer order to the Criminal District Court No. 1 was not required. *Id.*

Further, Texas courts have concluded that, even when a transfer order is required, its absence from the record is a procedural error rather than a jurisdictional error. *Mills v. State*, 742 S.W.2d 831, 834–35 (Tex. App.—Dallas 1987, no pet.); *Lemasurier v. State*, 91 S.W.3d 897, 899 (Tex. App.—Fort Worth 2002, pet. ref'd). The absence of a transfer order merely subjects the transferee court to a timely plea to the jurisdiction; it does not render actions of the transferee court void. *Mills*, 742 S.W.2d at 835; *Lemasurier*, 91 S.W.3d at 899. If no timely plea to the jurisdiction is filed in the trial court, the defendant waives the right to complain about the lack of a transfer order on appeal. *Mills*, 742 S.W.2d at 835; *Lemasurier*, 91 S.W.3d at 899–900. Because Duenas did not file a plea to the jurisdiction in the trial court, he has waived his complaint on appeal about the lack of a transfer order. *Mills*, 742 S.W.2d at 835; *Lemasurier*, 91 S.W.3d at 899–900. We resolve Duenas's third point of error against him.

## Amendment of Indictment

In his first point of error, Duenas asserts an amendment of the indictment did not comply with articles 28.10 and 28.11 of the code of criminal procedure and, therefore, had no effect and the evidence is insufficient, when measured against a hypothetically correct jury charge, to support a conviction on the original charged offense of continuous sexual abuse of a child.[3]

---

[3] Article 28.10 provides:

Duenas specifically argues the State was required to file a written motion for leave to amend the indictment and obtain leave of the trial court to do so.

Duenas was charged by indictment with:

intentionally and knowingly, during a period that was 30 or more days in duration, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against [C.H.], a child younger than 14 years of age, hereinafter called complainant, namely by contact between the hand of defendant and genitals of complainant with the intent to arouse and gratify the sexual desire of defendant and by contact between the hand of complainant and genitals of defendant with the intent to arouse and gratify the sexual desire of defendant[.]

Prior to jury selection on the first day of trial, the prosecutor stated the State was abandoning certain language in the indictment which would lead to a charge of the lesser-included offense of indecency with a child. Duenas's counsel stated he had no objection to the State doing so. The trial court then admonished Duenas that his case had "just been reduced to a second-degree felony offense with a penalty range of 2 to 20 years in the Texas Department of Corrections Institutional Division." However, the face of the indictment was left unchanged; that is, no interlineation of the indictment was made to reflect the change.

Without objection, Duenas was arraigned before the jury that he did:

intentionally and knowingly, commit sexual abuse against [C.H.], a child younger than 14 years of age, hereinafter called complainant, namely, by contact between the hand of defendant and genitals of complainant with the intent to arouse and gratify the sexual desire of defendant [.]

---

(a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

(b) A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.

(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

TEX. CODE CRIM. PROC. ANN. art. 28.10 (West 2006). Article 28.11 provides that "[a]ll amendments of an indictment or information shall be made with the leave of the court and under its direction." *Id.* art. 28.11 (West 2006).

Further, Duenas did not object to the jury charge that stated he was charged by indictment with the offense of indecency with a child and instructed the jury on the offense of indecency with a child.

If an indictment is amended during trial, the defendant must object to the amendment or the objection is waived. TEX. CODE CRIM. PROC. ANN. art. 28.10(b) (West 2006); *State v. Murk*, 815 S.W.2d 556, 558 (Tex. Crim. App. 1991). There is no dispute the prosecutor orally informed the trial court that the State was abandoning certain language in the indictment, Duenas's counsel affirmatively stated he had no objection to the State's doing so, and the trial proceeded based on the charge of indecency with a child. To the extent Duenas complains the State amended the indictment without complying with articles 28.10 and 28.11 of the code of criminal procedure, he has waived any objection to its doing so. *See Murk*, 815 S.W.2d at 558; *Hoitt v. State*, 30 S.W.3d 670, 674 (Tex. App.—Texarkana 2000, pet. ref'd).

Further, even if Duenas preserved this issue for our review, there was no error by the trial court. There is a difference between the amendment of an indictment and the abandonment of language in the indictment "An amendment is an alteration to the face of the charging instrument which affects the substance of the charging instrument." *Eastep v. State*, 941 S.W.2d 130, 132 (Tex. Crim. App. 1997), *overruled on other grounds by Gollihar v. State*, 46 S.W.3d 243 (Tex. Crim. App. 2001) *and by Riney v. State*, 28 S.W.3d 561 (Tex. Crim. App. 2000); *see also Moore v. State*, 54 S.W.3d 529, 546 (Tex. App.—Fort Worth 2001, pet. ref'd). Conversely, an abandonment does not affect the substance of the charging instrument. *Eastep*, 941 S.W.2d at 133; *Moore*, 54 S.W.3d at 546.[4] A change of language in an indictment is appropriate to (1) abandon one or more alternative means of committing the offense, (2) abandon an allegation if

---

[4] *See also Steen v. State*, No. 05-04-01633-CR, 2006 WL 1624432, at *3 (Tex. App.—Dallas June 13, 2006, no pet.) (not designated for publication).

the effect is to reduce the charged offense to a lesser included offense, or (3) eliminate surplusage. *Eastep*, 941 S.W.2d at 135; *see also Chen v. State*, 410 S.W.3d 394, 396 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd); *Mayfield v. State* 117 S.W.3d 475, 476 (Tex. App.—Texarkana 2003, pet. ref'd). An abandonment of such language in the indictment does not invoke the requirements of articles 28.10 and 28.11 of the code of criminal procedure. *Eastep*, 941 S.W.2d at 135; *Chen*, 410 S.W.3d at 396.[5]

The State abandoned certain language in the indictment, reducing the charged offense of continuous sexual abuse of a child to the lesser included offense of indecency with a child. *See Soliz v. State*, 353 S.W.3d 850, 854 (Tex. Crim. App. 2011) ("To the extent that a continuous-sexual-abuse indictment alleges certain specific offenses, an 'offense listed under Subsection (c)' [of penal code section 21.01, which defines what constitutes of 'act of sexual abuse'] will *always* meet the first step of" a lesser included offense analysis.). The changes sought by the State, and approved by the trial court, did not constitute an amendment of the indictment. *Eastep*, 941 S.W.2d at 134–35; *Grey v. State*, 298 S.W.3d 644, 650 (Tex. Crim. App. 2009) ("In fact, the State can abandon an element of the charged offense without prior notice and proceed to prosecute a lesser-included offense.").[6] Therefore, the restrictions in articles 28.10 and 28.11 are inapplicable. *Eastep*, 941 S.W.2d at 135. Because the State chose to prosecute the lesser included offense of indecency with a child, we need not consider whether the evidence is sufficient to support a conviction of continuous sexual abuse of a child. *See* TEX. R. APP. P. 47.1. We resolve Duenas's first point of error against him.

---

[5] *See also Barron v. State*, No. 03-11-00519-CR, 2013 WL 3929121, at *7 n.3 (Tex. App.—Austin July 26, 2013, no pet.) (mem. op., not designated for publication) (concluding that analysis in *Eastep* regarding surplusage in indictment "remains good law" because court of criminal appeals continues to refer to analysis in *Eastep* with approval).

[6] *See also In re State ex rel. Weeks*, 391 S.W.3d 117, 123–24 (Tex. Crim. App. 2013) ("State could abandon the charged offense altogether in favor of prosecuting the lesser-included offense."); *Balentine v. State*, No. PD-1102-11, 2012 WL 4044895, at *1–2 (Tex. Crim. App. Sept. 12, 2012) (not designated for publication) (decision to abandon greater and pursue lesser offense does not constitute an amendment to indictment).

## Sufficiency of the Evidence

In his second point of error, Duenas contends the evidence is insufficient to support the conviction for indecency with a child. Duenas specifically argues no rational juror could have found beyond a reasonable doubt that he acted with the specific intent to arouse or gratify his sexual desire.

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see also Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). As the fact finder, the jury is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("The factfinder exclusively determines the weight and credibility of the evidence."). We defer to the jury's determinations of credibility, and may not substitute our judgment for that of the jury. *Jackson*, 443 U.S. at 319; *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (in conducting legal sufficiency analysis, appellate court "may not re-weigh the evidence and substitute our judgment for that of the jury"). When there is conflicting evidence, we must presume the factfinder resolved the conflict in favor of the verdict, and defer to that resolution. *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Evidence is sufficient if

"the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise*, 364 S.W.3d at 903.

A person commits indecency with a child by engaging in sexual contact with a child younger than seventeen years of age. TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2011). "Sexual contact" includes touching by a person, including touching through clothing, of the genitals of a child with the intent to arouse or gratify the sexual desire of any person. *Id.*§ 21.11(c)(1). The testimony of a child victim alone is sufficient to support a conviction for indecency with a child. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2014); *Proctor v. State*, 356 S.W.3d 681, 685 (Tex. App.—Eastland 2011, pet. ref'd); *see also Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.–Dallas 2002, pet. ref'd) (child victim's testimony sufficient to support conviction for aggravated sexual assault).

Whether the person possessed the requisite intent to commit an offense is most often proven through circumstantial evidence surrounding the crime. *Sholars v. State*, 312 S.W.3d 694, 703 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *Scott v State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd). The jury may infer the requisite intent from the acts, words, and conduct of the accused. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *Scholars*, 312 S.W.3d at 703. In the context of indecency with a child, the jury can infer the intent to arouse or gratify from conduct alone. *Scott*, 202 S.W.3d at 408; *see also McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981). "No oral expression of intent or visible evidence of sexual arousal is necessary." *Scott*, 202 S.W.3d at 408; *see also Connell v. State*, 233 S.W.3d 460, 467 (Tex. App.—Fort Worth 2007, no pet.).

C.H. testified that, on multiple occasions, Duenas touched her vagina over her clothes. *See Morgan v. State*, 692 S.W.2d 877, 881 (Tex. Crim. App. 1985) (extraneous offense evidence that defendant had touched complainant in same manner on previous occasions had "indubitable probative value" of defendant's intent); *Abbott v. State*, 196 S.W.3d 334, 341 (Tex. App.—Waco 2006, pet. ref'd) (evidence defendant committed same conduct on other occasions is evidence of intent). As he touched her, Duenas moved his fingers, and the way her touched her made C.H. feel uncomfortable. *See Abbott*, 196 S.W.3d at 341 (jury could infer from defendant's conduct in touching child's genitals that it was done with intent to arouse and gratify his sexual desire). Duenas told C.H. not to tell anybody that he was touching her and gave her money after he touched her. A.S. testified that C.H. said that Duenas touched her "chochito," or vagina; demonstrated the way he touched her; and said that, as he touched her, he "also touched his chochito."

Viewing the evidence in the light most favorable to the verdict, we conclude a rational jury, as the sole judge of the credibility of the witnesses and the weight to be given their testimony, could reasonably infer that Duenas's conduct was undertaken to arouse or gratify his sexual desire. Accordingly, we conclude there was sufficient evidence to find the specific intent necessary to support Duenas's conviction for indecency with a child. We resolve Duenas's second point of error against him.

**Jury Charge Error**

In his fourth point of error, Duenas contends the trial court erred by submitting a jury charge in the punishment phase that incorrectly instructed the jury about good conduct time. Duenas contends the erroneous instruction "essentially instructed the jury that [Duenas] would become eligible for parole much sooner than he actually would be under a correct statement of the law" and, therefore, gave the jury an incentive to impose a longer sentence.

Our first duty in analyzing a jury-charge issue is to decide whether error exists. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If error exists, we must determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). When, as in this case, the error was not objected to, the error must be "fundamental" and requires reversal only if it was "so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal v. State*, No. PD-0332-13, 2015 WL 458146, at *3 (Tex. Crim. App. Feb. 4, 2015) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). Egregious harm exists when the record shows that a defendant has suffered actual, rather than merely theoretical, harm from jury-charge error. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 174. Egregious harm consists of error affecting the very basis of the case, depriving the defendant of a valuable right, or vitally affecting a defensive theory. *Nava*, 415 S.W.3d at 298 (citing *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)). "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villarreal*, 2015 WL 458146, at *3 (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). We assess harm in light of "the entire jury charge, the state of the evidence (including the contested issues and the weight of probative evidence), the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole." *Nava*, 415 S.W.3d at 298.

The trial court was statutorily required to instruct the jury on parole law and good conduct time. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (West Supp. 2014); *Luquis v. State*, 72 S.W.3d 355, 363 (Tex. Crim. App. 2002). During the punishment phase of the trial, the trial court instructed the jury that:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed. Eligibility for parole does not guarantee that parole will be granted.

However, the jury should have been instructed that Duenas would not become eligible for parole until the actual time served, *without considering good conduct time*, equaled one-half of the sentence imposed. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a); *Igo v. State*, 210 S.W.3d 645, 646 (Tex. Crim. App. 2006). Accordingly, the trial court's instruction to the jury was erroneous. *See Igo*, 210 S.W.3d at 646.[7]

In considering whether Duenas was egregiously harmed by the error, we look first at the jury charge as a whole. In addition to the erroneous parole eligibility instruction, the jury was provided the statutory instructions explaining good conduct time and parole:

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.
>
> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a). The jury was also given mitigating or curative instructions in the paragraphs following the instruction containing the erroneous language:

> It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.
>
> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

---

[7] *See also Hubert v. State*, No. 05-12-01084-CR, 2014 WL 1022324, at *12 (Tex. App.—Dallas Mar. 4, 2014, pet. ref'd) (not designated for publication) (trial court erred in giving instruction that did not comply with article 37.07, § 4(a) of code of criminal procedure).

*See id.*; *Ross v. State*, 133 S.W.3d 618, 624 (Tex. Crim. App. 2004); *see also Igo*, 210 S.W.3d at 647. Finally, the trial court instructed the jury:

> You are instructed that in determining the punishment in this case, you are not to discuss among yourselves how long the defendant will be required to serve any sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Paroles and are no concern of yours.

The trial court's instructions informed the jury that Duenas may be released from a prison sentence early because of good conduct time or parole, but that it could not be predicted how parole law and the award of good conduct time might be applied to him. Further, the jury was explicitly instructed that, although it could consider the existence of parole law and good conduct time, it could not consider the manner in which parole law or the award of good conduct might specifically be applied to Duenas. *See Ross*, 133 S.W.3d at 624; *Igo*, 210 S.W.3d at 647.[8]

Absent evidence to the contrary, we presume jurors understood and followed the trial court's instructions in the jury charge. *See Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011); *Luquis*, 72 S.W.3d at 366. The jury did not send out any notes or questions expressing confusion about the parole instruction or indicating the possible application of good conduct time or the parole law to Duenas. *See Lopez v. State*, 314 S.W.3d 70, 73 (Tex. App.— Waco 2010, no pet.) (op. on reh'g); *Taylor v. State*, 146 S.W.3d 801, 810 (Tex. App.— Texarkana 2004, pet. ref'd).[9] Further, nothing else in the record "suggests that the jury discussed, considered or tried to apply (despite the judicial admonition *not* to apply) what they were told about good conduct time and parole." *Ross*, 133 S.W.3d at 624 (quoting *Luquis*, 72 S.W.3d at 367).

We next consider the state of the evidence, including the contested issues and the weight of probative evidence. C.H. testified that Duenas touched her vagina over her clothes on

---

[8] *See also Hubert*, 2014 WL 1022324, at * 14.

[9] *See also Hubert*, 2014 WL 1022324, at *14.

multiple occasions. He told her not to tell anybody that he was touching her and gave her money after he touched her. K.P. testified C.H. told her about "something bad" and, after that, K.P. tried to ensure that C.H. was not alone with Duenas. A.S. testified that C.H. told A.S. that Duenas was touching C.H. on her "chochito," or vagina, and that while he did so, Duenas touched his own "chochito." A.S. also confirmed that C.H. had money, even though she was not regularly given an allowance. If, as it did, the jury believed C.H., K.P., and A.S., the evidence of Duenas's guilt was strong and provides a basis for the jury's assessment of punishment without suggesting harm from the erroneous charge.

The third factor in our analysis is the arguments of counsel. In the punishment phase, the State waived its right to argue first. Duenas's counsel then argued the law provided for a large punishment range for indecency with a child because there was a "differentiation between the seriousness of the charge and that's – and the contact, and that's why we have such a large range of time." He asserted the jury had seen C.H. and should consider that this was not a case where the child's life had been ruined or she was going to need long-term counseling. He also asked the jury to consider Duenas's age, his extended family responsibilities, and the fact that people who had known him for years believed C.H.'s accusation was completely out of character for him. He requested a punishment in the range of "two to three, five years."

The prosecutor argued that C.H. had been affected by Duenas's conduct. She requested the jury to consider that, based on Duenas giving C.H. coloring books to provide an opportunity to touch her, his conduct was calculated. The prosecutor also pointed out that Duenas had a number of granddaughters who he would have access to once he was no longer in prison. The prosecutor requested the jury hold Duenas accountable for what he did to C.H. and protect other children. Neither Duenas's counsel nor the prosecutor discussed parole law or good conduct time during their arguments. *See Luquis*, 72 S.W.3d at 367 (noting neither counsel discussed

–15–

good conduct time in argument or urged jury to assess greater (or lesser) sentence based upon any potential good conduct time credit); *Atkinson v. State*, 107 S.W.3d 856, 859 (Tex. App.—Dallas 2003, no pet.) (considering whether State emphasized possibility of parole in argument in determining whether appellant was egregiously harmed by erroneous parole law instruction).

Finally, we consider any other relevant information in the record and note that Duenas was sentenced to eight years' imprisonment. *See Lopez*, 314 S.W.3d at 73 (considering severity of sentencing in determining whether appellant was egregiously harmed by erroneous parole law instruction). Although this is a longer sentence than requested by his counsel, it was much less than the maximum punishment of twenty years' imprisonment.

The factors discussed above mitigate against a finding of egregious harm. The jury charge contained curative or mitigating instructions. The parole instruction explained the possibility, not certainty, that Duenas's prison sentence may be reduced by good conduct time or parole eligibility and, further, clearly admonished the jury not to consider the extent to which the parole law or good conduct time might be applied to him. No reference to good conduct time or parole eligibility was mentioned by either party during punishment phase arguments, and there is no evidence in the record that the jury attempted to apply parole law or good conduct time when assessing Duenas's sentence. Finally, Duenas did not receive the maximum sentence available.

Under the standards necessary to show egregious harm, we conclude the erroneous parole eligibility instruction did not deprive Duenas of a fair and impartial trial or affect the very basis of the case, deprive him of a valuable right, or vitally affect a defensive theory. *See Villarreal*, 2015 WL 458146, at *3; *Nava*, 415 S.W.3d at 298. Based on our review of the entire record, we conclude that egregious harm has not been shown. We resolve Duenas's fourth point of error against him.

**Modification of Judgment**

Duenas was convicted of indecency with a child, a second-degree felony, under section 21.11 of the penal code. The trial court's judgment, however, reflects Duenas was convicted of "Sex Abuse Continuous Child/14," a first-degree felony, under section 22.021 of the penal code. This Court has the power to modify an incorrect judgment to make the record speak the truth when we have the necessary information before us to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Therefore, on our own motion, we modify the trial court's judgment to show Duenas was convicted under section 21.11 of the penal code of indecency with a child, a second-degree felony.

As modified, we affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

140192F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

RITO DUENAS A/K/A RITO DUENAS-
QUINTERO, Appellant

No. 05-14-00192-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 7, Dallas County, Texas,
Trial Court Cause No. F-1354251-Y.
Opinion delivered by Justice Fillmore,
Justices Bridges and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The section of the judgment titled "Offense for which Defendant Convicted" is modified to state "Indecency with a Child."

The section of the judgment titled "Statute for Offense" is modified to state "21.11 Penal Code."

The section of the judgment titled "Degree of Offense" is modified to state "2nd Degree Felony."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 16th day of March, 2015.