**AFFIRM; and Opinion Filed October 26, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00413-CR

**VINCENT PASCO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F-1259001-Y**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Brown, and Schenck
Opinion by Justice Schenck

Vincent Pasco appeals his conviction and life sentence for murder. In three issues, appellant argues the evidence is insufficient to prove he was the person who committed the offense, he was denied due process by an instruction in the punishment charge about good-time credit and parole, and the trial court lacked jurisdiction. We affirm his conviction. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

Appellant (known as "Grinch") became acquainted with the victim, Derrick Brown, in connection with the sale of drugs at an apartment located in southern Dallas. On July 26, 2012, Brown was at the apartment with appellant, a man known as "Banks," Shannon Wright, and Chadrick Kennedy. Appellant, Wright and Brown stayed overnight; Banks and Kennedy did not. The next day, it was business as usual at the apartment. Customers arrived, and appellant,

Wright, and Brown sold them drugs. At some point appellant left to serve a customer. He left behind a pack of drugs, and Brown took it. Brown left the apartment for a short period of time, taking appellant's drugs with him. When Brown returned to the apartment, appellant and Wright were there. Banks appeared shortly thereafter with more drugs. Banks argued with Wright about the missing drugs, and then he left.

Wright's mother, who lived in the same complex in which the apartment was located, came by to get some money from her son. At that time, only appellant, Wright, and Brown were in the apartment. Wright stepped outside to talk to his mother. He gave her some money, and she returned to her residence in the complex. While Wright stayed outside to smoke a cigarette, he heard two gunshots. He tried to get into the apartment, but the door was locked. He looked through the blinds and saw blood on the walls. Wright went to his mother's residence and told her he thought Grinch had just shot Brown. Wright returned to the apartment and kicked in the door. He found Brown on the couch, bleeding from ear to ear. He saw appellant running out of the back door. Wright called out to appellant, but he did not stop.

## DISCUSSION

### IDENTITY OF THE MURDERER

In his first issue, appellant challenges the legal sufficiency of the evidence to prove he was the gunman who shot Brown.

#### Legal Sufficiency of the Evidence

When conducting a legal-sufficiency review, a court must ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979). In so doing, we assess the evidence "in the light most favorable to the prosecution." *Id.* This same standard applies equally to circumstantial and direct evidence. *Burden v. State,* 55 S.W.3d 608, 613 (Tex. Crim. App.

2001). The jury is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *See Bonham v. State,* 680 S.W.2d 815, 819 (Tex. Crim. App. 1984). The jury is free to accept or reject all or any part of a witness's testimony. *See id; Dumas v. State,* 812 S.W.2d 611, 615 (Tex. App.—Dallas 1991, pet. ref'd). This Court is only to ensure that the jury reached a rational conclusion, not to re-evaluate the weight and credibility of the evidence. *See Muniz v. State,* 851 S.W.2d 238, 246 (Tex. Crim. App. 1993). Because appellant challenges the sufficiency of the evidence to prove identity, we examine the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found beyond a reasonable doubt that he was in fact the person who shot the victim. *See Cardenas v. State*, 971 S.W.2d 645, 648–49 (Tex. App.—Dallas 1998, pet. ref'd). Viewed through this lens, we find ample evidence to support a reasonable juror's conclusion that appellant was the person who shot Brown.

Wright, who was present at the apartment on the day of the shooting, testified that the only people at the apartment at the time Brown was killed were Wright, Brown, and appellant. Wright knew appellant as Grinch. Wright stepped outside the apartment before Brown was shot. Wright heard two gunshots. He kicked in the door and found Brown on the couch bleeding from ear to ear. Wright saw appellant running out of the back door. He called out to him, but appellant did not stop or respond. Wright told the jury that he believed appellant shot and killed Brown.

Wright's mother also testified she heard the gunshots and saw appellant fleeing from the back of the apartment while holding a phone up to his ear. Wright's mother identified appellant in open court as that person and testified she knew him as Grinch.

Jordan Price testified that he was at a family gathering at the same apartment complex when the offense occurred. He heard the gunshots and saw a man with "bright" skin coming out

–3–

from the back of the complex through the parking lot. He testified the man had a gun tucked into the back of his pants. Price described the man as having long hair and wearing a peach colored shirt and baggy blue jeans. The man ran in front of Price and then across the freeway as he fled the scene. Price identified appellant as the man he saw fleeing from the apartment complex in a photo lineup.

Kennedy testified that he was not at the apartment on the day Brown was murdered. Cell phone records associated with Kennedy's cell phone number were introduced into evidence and showed that his phone made a call from a location in Irving, Texas, at the time of the offense. The evidence further established that neither Banks nor Kennedy physically resemble appellant.

Zina Shaw testified that she started dating appellant in March or April of 2012. Shaw stated appellant called her after Brown was murdered and talked to her about the offense. This led her to ask him why he did this and he replied, "It was me or him." "They tried to hoe me." Then Shaw asked appellant, "Was that you running across the freeway?" He said, "Yes."

In summary, three witnesses identified appellant and testified that they saw him flee from the scene of the crime shortly after hearing the gunshots. One witness saw a gun in appellant's waistband as appellant ran past him. Wright established a motive for the shooting, that being retribution for the theft of drugs, and established appellant and Brown were the only people in the apartment at the time of the shooting. Appellant told a girlfriend he shot Brown. From this evidence, the jury could have found, beyond a reasonable doubt, that appellant was the gunman who shot Brown. We overrule appellant's first issue.

**INSTRUCTION CONCERNING GOOD CONDUCT TIME**

In his second issue, appellant argues because he was ineligible for good conduct time, the trial court erred by including a jury instruction about good conduct time.

The complained of instruction tracks the language in article 37.07, section 4(a) of the

code of criminal procedure. This instruction is mandated by the code of criminal procedure. *See Campbell v. State*, No. 05–14–00563–CR, 2015 WL 4550678, at * 1–2 (Tex. App.—Dallas July 28, 2015, no pet), (citing TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (West Supp. 2014)). The article sets out the exact language the trial courts are required to include. *Id.* As described by the court of criminal appeals, the statutory parole charge instructs a jury in general terms about the existence and possible grant of parole. *Luquis v. State,* 72 S.W.3d 355, 360 (Tex. Crim. App. 2002). The instruction also refers to the concept of "good conduct time" and states that a person sentenced to prison might earn some reduction in his period of incarceration through the discretionary award of good-conduct time. *Id.* The instruction also warns the jury that it cannot accurately predict how the concepts of good-conduct time and parole might be applied to any particular person and thus it may not consider how those concepts might apply to the defendant. *Id.* The overall purpose of the instruction is to generally inform jurors of good conduct time and parole, but prohibit them from using the notions of these concepts in assessing the appropriate punishment. *Id.*

Appellant maintains that because he is not eligible for good-conduct time, the parole charge was unconstitutional as applied to him. *See* TEX. GOV'T CODE ANN. § 508.149(a)(5) (West Supp. 2014). In *Luquis,* the court of criminal appeals rejected the argument appellant makes. *Luquis,* 72 S.W.3d at 365. In *Luquis*, and in this case, the jury was instructed not to consider how good-conduct time or the parole law may be applied to the defendant. We assume the jury followed these instructions, and we will not find constitutional error unless we conclude that a reasonable jury probably was actually confused by this charge. *See id.* at 366–67.

Appellant did not object to the court's charge on punishment and thus bears the burden to show that any error resulted in egregious harm such that he did not receive a fair and impartial trial. *See Jiminez v. State,* 32 S.W.3d 233, 235 (Tex. Crim. App. 2000); *Atkinson v. State,* 107

S.W.3d 856, 859–60 (Tex. App.—Dallas 2003, no pet.). Appellant claims there is a reasonable probability the parole charge mislead the jury. He does not elaborate on how or why the jury was misled. As in *Luquis,* nothing in the record suggests the jurors discussed, considered, or tried to apply what they were told about good-conduct time and parole. *See id.* at 367. For example, the jury did not send out any notes on the subject and the prosecution did not mention parole or good-conduct time during closing arguments. Appellant has not demonstrated a reasonable likelihood that the jury was in fact misled by the instruction or that it assessed a higher punishment based on any misconstruction of the parole law charge. *See id.* at 368. Under these circumstances, the parole instruction did not violate appellant's right to due process, and we cannot conclude that appellant suffered egregious harm. *See id.; Atkinson,* 107 S.W.3d at 860. We overrule appellant's second issue.

**TRIAL COURT'S JURISDICTION**

In his third issue, appellant argues Criminal District Court Number 7 lacked jurisdiction over his case because the case was not transferred to its docket. More particularly, he claims that the indictment was presented to Criminal District Court Number 3 and invested that court with jurisdiction over the case. Based on the absence of a transfer order from Criminal District Court Number 3 to Criminal District Court Number 7, appellant contends Criminal District Court Number 7 never acquired jurisdiction.

The failure to file a written transfer order is a procedural error, not a jurisdictional one. *Lamasurier v. State*, 91 S.W.3d 897, 899 (Tex. App.—Fort Worth 2002, pet. ref'd). This procedural error does not render the actions of the later court void, but merely makes them subject to a timely plea identifying the issue. *Garcia v. State*, 901 S.W.2d 731, 732-33 (Tex. Crim. App. 1995). As a result, a defendant who does not file a timely plea forfeits any complaint

about the lack of a written transfer order. *Mills v. State*, 742 S.W.2d 831, 835 (Tex. App.—Dallas 1987, no pet.).

In this case, appellant never filed a plea concerning the lack of a transfer order to the Criminal District Court Number 7 nor in any other way challenged the competence of that court over the indictment. In fact, he entered a plea of not guilty to the indictment in that court, and he was tried, convicted, and sentenced in that court. By failing to raise the issue in the district court and entering a plea and participating through counsel at trial, appellant forfeited his complaint about the lack of a transfer order. Accordingly, appellant's third issue as to the trial court's jurisdiction is without merit and is overruled.

## CONCLUSION

Having resolved all of appellant's issues against him, we affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47

140413F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

VINCENT PASCO, Appellant

No. 05-14-00413-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7, Dallas County, Texas

Trial Court Cause No. F-1259001-Y.

Opinion delivered by Justice Schenck.

Justices Lang-Miers and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 26th day of October, 2015.