**Affirmed as modified; Opinion Filed August 1, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-18-00801-CR
_____

**THOMAS WILSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F16-71680-T**

## MEMORANDUM OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Partida-Kipness

Appellant, Thomas Wilson, was indicted for aggravated assault with a deadly weapon. A jury convicted him of the offense, as alleged in the indictment. The trial court assessed punishment at forty-five years' imprisonment. On appeal, Wilson contends that: (1) the evidence is insufficient to prove that Wilson was the shooter; (2) the trial court erred by including a definition of reasonable doubt in the jury charge; and (3) the trial court did not have jurisdiction to hear the case and render judgment. In a cross-issue, the State requests that we modify the judgment to reflect that Wilson pleaded true to both enhancement paragraphs, and that the court found the paragraphs to be true. The State also requests that we modify the judgment to reflect that punishment was assessed by the trial court. As modified, we affirm the trial court's judgment. Because the issues are settled in law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.4.

# BACKGROUND

Wilson was charged with committing aggravated assault with a firearm against Jasmine Gaut. Gaut is a twenty-four year-old woman, single mom, raising a six-year-old-boy. Gaut testified she met Wilson in February 2016 on a dating website. Once the relationship started, Gaut and Wilson were together all the time and Wilson treated her well. The majority of the time together, they would "get high," using both marijuana and cocaine, but mostly cocaine. A few weeks into the relationship, Wilson's demeanor towards Gaut changed in a negative way. Gaut testified that they argued often when they got high and that it would get physical. The first time they argued, Wilson pulled her down to the ground by her hair and dragged her out of his mother's house on her back. From that point forward, every argument became physical—Wilson not only dragged her by the hair, but would punch and slap her in the face. A lot of the arguments stemmed from Gaut texting other men or Wilson texting other women, in particular, his ex-girlfriend, Ronda.

Gaut testified that as the months passed, Wilson's behavior towards her got worse. Wilson led Gaut to believe they were in a committed relationship but there were times that he would leave and have no contact with Gaut for several days. Nevertheless, Gaut stayed with him because Wilson always made her feel better when he came back by providing her with drugs and money, and making promises about their future life together as a family. However, Gaut believed Wilson was cheating on her with Ronda, and one day, while they were getting high, Wilson admitted that he was.

On August 14, 2016, Gaut and Wilson were getting high at an apartment in the Meadows complex where they bought and sold drugs. Gaut testified that they had an argument and Wilson punched her in the eye after Ronda called Wilson and Gaut answered the phone. Wilson made her stay with him most of the day because her eye had begun to swell. Later that day, however, Wilson

let her leave so she could pick up and cash her paycheck from her job at Walmart. After she cashed the check, Gaut called Wilson. When he did not answer the phone, she returned to the apartment at the Meadows complex and saw Wilson sitting with Ronda in Ronda's silver two-door car. Gaut was hurt and infuriated so she went over to the car, knocked on the window, told Ronda she could have Wilson, and told Wilson they "were done." Wilson reacted by jumping out of the car and pulling out a gun. Wilson started firing the gun and Gaut ran. Wilson continued shooting at Gaut as he chased her through the breezeways in the complex. Gaut knocked on doors and screamed for help, but to no avail. Gaut testified that she fell down as she was running and Wilson caught up to her, put the gun to her head, and pulled the trigger. However, the gun did not go off and Gaut got up and continued running; Wilson began shooting at her again. Gaut made it back to her car, a white four-door Chevy, and tried to get in, but Wilson blocked the door. Ronda intervened, and told Wilson that Gaut was not worth it. Wilson insisted that Gaut was going to call the police and shot the back tire of Gaut's car. Wilson then punched Gaut in the eye, and he and Ronda got into Ronda's car and sped away. The police arrived 30–45 minutes later. The responding officer testified that when Gaut calmed down enough to speak to him, she told him that it was her boyfriend of five months who was shooting at her and gave the officer Wilson's name.

Wilson was arrested on September 12. Wilson called Gaut from jail and asked her to drop the charges and to call his attorney. Gaut testified that after Wilson got out of jail, he kept calling her, and she agreed to see him again. Wilson again asked her to drop the charges and took Gaut to his lawyer's office, where she signed an affidavit of non-prosecution. The relationship continued and, at first, was going well. However, like before, things again changed. Gaut testified regarding an incident where Wilson strangled her until she lost consciousness. She and Wilson were high and had gotten into an argument while they were driving around Dallas. Wilson questioned Gaut about whether she was going to go through with the charges. Although she told

him "no," Wilson apparently did not believe her, and choked her until she passed out. When she woke up, she saw a sign that said "Welcome to Louisiana;" there was also another woman in the car. Gaut talked Wilson into taking her back to Dallas after she gave him her phone, and everything she had, and told him that she was "not fixing to do none of this." Wilson dropped her off on the side of the freeway close to her best friend's house. Her best friend talked her into going to the doctor. The doctor told her that she could have died within the next twenty-four hours from her injuries had she not gotten treatment.

Wilson was eventually arrested again. While he was in jail, Wilson sent Gaut a letter and asked her to come to court for him. He also told her to call his attorney's office because they would tell her what to do.

Two residents living at the Meadows apartment complex also testified about the shooting incident on August 14. Jackie Serrano testified she lived in a third floor apartment facing the playground. She was in her living room watching TV when she heard two gunshots and heard a young lady screaming. She looked out and saw a man and a young lady in front of a white car. She saw the man shooting towards the car, and then saw the young lady running towards the apartments. The man was chasing the lady and shooting at her as she ran into the hallway and screamed for help. Serrano heard a total of five or six shots being fired. Serrano testified it was dark and certain areas in the complex were not well-lit, so she could not tell what the man and lady looked like. However, when they ran towards the playground and crossed a lighted area, she could see that they were both black. Serrano testified that once she heard the gunshots, she called 911. By the time the police arrived, the man was gone. She testified that around the same time as the

shootings, she saw a man coming down the hallway and get into a dark-colored car being driven by another female. The car then sped out of the complex.

Denise Mathis testified she lived in a first floor apartment right in front of the playground. Mathis, her four children, and some of their friends were watching TV and heard a man and woman arguing. She looked out the window. The female was black. She saw a second female who was also black. She was also able to determine that the man was black when she saw him drive out of the complex. About five minutes after she heard the man and woman arguing, she heard a loud crash; a bullet had gone through the patio door and blinds and into a bedroom. As she looked out her patio, she saw the man chasing the woman with a gun. She saw them run into a breezeway, and heard three or four more shots. When the woman ran into her breezeway, Mathis opened her door. The woman was saying, "Please help. Please help. He (sic) trying to kill me." Mathis was terrified and did not let the woman in. Mathis then looked back out the window and saw them all back at the car arguing. The woman was trying to leave in a white four-door car, and the man was still shooting the gun, pointing it at the woman. Mathis later found out that the man had actually shot out the tire of the woman's car. Mathis then saw the man get in a small silver car and speed out of the apartment complex with the other woman. At that point, Mathis called the police and let Gaut use her phone. Mathis testified that Gaut was very emotional and was crying. Gaut told Mathis that once she got in the breezeway, Wilson put the gun to her head and clicked it, but the gun did not shoot.

## ANALYSIS

### I. Sufficiency of Evidence

In his first issue, Wilson contends the evidence is insufficient to prove the element of identity. We disagree.

In reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict, and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 313 (1979); *Brooks v. State,* 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We assume the fact finder resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the trier of fact's determinations of witness credibility and the weight to be given their testimony. *Brooks,* 323 S.W.3d at 899. Circumstantial evidence is as probative as direct evidence in establishing the guilt of the accused. *Clayton*, 235 S.W.3d at 778. Circumstantial evidence alone can be sufficient to establish guilt. *Id*. The testimony of a single eyewitness alone can be sufficient to support a conviction. *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971).

Wilson does not dispute that Gaut identified Wilson as the person who shot at her. Rather, his counsel points to evidence showing Gaut was jealous of Wilson's relationships with other women, Gaut's admission that she told Wilson she would not go through with the charges if he gave her money and paid her car note, and Gaut's testimony initially denying that it was her voice on the recording of the phone call where she asked for money. Counsel then argues, "Gaut's bias and motive to testify falsely, and actually having done that, reduced her credibility to the point that her identification of Wilson provided no more than a modicum of evidence on that element." Counsel's attempt to impeach Gaut's identification of Wilson with such evidence does not render the evidence insufficient to find that Wilson committed the offense. Aside from the fact that in addition to Gaut's unequivocal identification of Wilson as the shooter, the jury also heard testimony from the residents of the apartment complex corroborating Gaut's description of the circumstances surrounding the assault, and evidence regarding Wilson's phone calls, letters, and

physical intimidation attempting to persuade Gaut to drop the charges, the jury is the sole judge of a witness's credibility. We may not substitute our judgment for that of the jury. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).

We conclude the evidence is sufficient to support the conviction. Wilson's first issue is overruled.

## II.    Reasonable Doubt Instruction

In his second issue, Wilson contends the trial court erred by giving a definition of reasonable doubt in the jury charge in violation of the holding in *Paulsen v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). We disagree.

In this case, the court's charge included the following instruction: "It is not required that the prosecution proves guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." As Wilson acknowledged in his brief, this Court, as well as several other courts, have previously concluded the complained-of instruction does not constitute a definition of reasonable doubt because "[i]t simply states the legally correct proposition that the prosecution's burden is to establish appellant's guilt beyond a reasonable doubt and not all possible doubt." *O'Canas v. State*, 140 S.W.3d 695, 702 (Tex. App.—Dallas 2003, pet. ref'd). *See also Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010) (citing *Woods v. State*, 152 S.W.3d 105, 115 (Tex. Crim. App. 2004); *Ochoa v. State*, 119 S.W.3d 825, 829 (Tex. App.—San Antonio 2003, no pet.); *Torres v. State*, 116 S.W.3d 208, 212 (Tex. App.—El Paso 2003, no pet.); *Fluellen v. State*, 104 S.W.3d 152, 163–64 (Tex. App.—Texarkana 2003, no pet.); *Minor v. State*, 91 S.W.3d 824, 828–29 (Tex. App.—Fort Worth 2002, pet. ref'd); *Carriere v. State*, 84 S.W.3d 753, 759-60 (Tex. App.—Houston [1st. Dist.] 2002, pet. ref'd). The complained-of language instructs the jury that it is the State's burden to prove the elements of the

crime for which Wilson was charged beyond a reasonable doubt.  We conclude the instruction did not violate *Paulson* and did not constitute jury charge error.  Wilson's second issue is overruled.

## III.     Jurisdictional Challenge

In his third issue, Wilson contends that the trial court lacked jurisdiction because the case was originally presented for indictment in a different trial court, and there were no written orders transferring the case to the court that tried the case and rendered judgment.[1]

When a defendant fails to file a plea to the jurisdiction, he waives any right to complain that a transfer order does not appear in the record.  *See Lemasurier v. State*, 91 S.W.3d 897, 899 (Tex. App.—Fort Worth 2002, pet. ref'd); *Mills v. State*, 742 S.W.2d 831, 834–35 (Tex. App.—Dallas, 1987, no writ.).  Wilson did not file a plea to the jurisdiction in this case.

Further, even if Wilson had preserved his complaint for our review, this Court has considered and rejected this argument on numerous occasions, and we do so again today.  *See Bourque v. State*, 156 S.W.3d 675, 678 (Tex. App.—Dallas 2005, pet. ref'd); *Dickerson v. State*, No. 05-18-00949-CR, 2019 WL 2865273, at \*3 (Tex. App.—Dallas July 3, 2019, no pet. h.) (mem.op., not designated for publication); *Hopkins v. State*, No. 05-17-01344-CR, 2018 WL 5024023, at \*1 (Tex. App.—Dallas Oct. 17, 2018, no pet.) (mem.op., not designated for publication); *Hines v. State*, No. 05-17-00416-CR, 2017 WL 6276005 at \*1–2 (Tex. App.—Dallas Dec. 11, 2017, no pet.) (mem.op., not designated for publication); *Hawkins v. State*, No. 05-15-00859-CR, 2016 WL 335702, at \*1 (Tex. App.—Dallas January 27, 2016, no pet.) (mem. op., not designated for publication).  The 283rd Judicial District Court had jurisdiction to hear Wilson's case and render the judgment.  We overrule Wilson's third issue.

---

[1] Wilson's indictment was presented to a grand jury impaneled in the 194th Judicial District Court.  Following the return of the indictment, the case was filed in Criminal District Court No. 7.  On February 14, 2018, the case was transferred to the 283rd Judicial District Court where judgment was rendered and Wilson was sentenced to prison.  Wilson does not challenge the transfer of the proceedings between Criminal District Court No. 7 and the 283rd Judicial District Court.

**IV.     Modification of Judgment**

In a cross-issue, the State requests that we modify the judgment to reflect that Wilson pleaded true to both enhancement paragraphs, and that the court found the paragraphs to be true. The State also requests that we modify the judgment to reflect that punishment was assessed by the trial court. This Court has the authority to modify an incorrect judgment to correct a clerical error when the evidence necessary to correct the judgment appears in the record. *See Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd).

Wilson was convicted of aggravated assault, a second-degree felony with a punishment range of two to twenty years' imprisonment. TEX. PENAL CODE §§ 12.33(a), 22.02(a)(2)(b). The record also reflects that Wilson pleaded true to two enhancement allegations, which increased his punishment to imprisonment for life, or twenty-five to ninety-nine years. *Id*. §12.42(d). The trial court sentenced Wilson to forty-five years' imprisonment. However, the court made no express finding of true with respect to the enhancements, and the judgment reflects no such finding. Further, the judgment shows no pleas on the two enhancements paragraphs and erroneously reflects that punishment was assessed by the jury.

A plea of true to an enhancement paragraph relieves the State of its burden to prove the prior convictions alleged for enhancement. *Ex parte Rich*, 194 S.W.3d 508, 513 (Tex. Crim. App. 2006); *Harvey v. State*, 611 S.W.2d 108, 111 (Tex. Crim. App. 1981). A trial court makes an implied finding of true to an enhancement allegation when the record establishes the truth of that allegation. *Torres v. State*, 391 S.W.3d 179, 183 (Tex. App.—Houston [1st. Dist.] 2012, pet. ref'd); *Dawkins v. State*, No. 05-16-00101-CR, 2017 WL 3301784, at *2 (Tex. App.—Dallas Aug. 3, 2017, no pet.) (mem. op., not designated for publication); *Harris v. State*, No. 05-02-01728-CR, 2005 WL 639388, at *1 (Tex. App.—Dallas Mar. 21, 2005, pet. ref'd). Additionally, appellate

courts have concluded that a trial court implied a finding of true to an enhancement allegation if the sentence imposed was outside of the range for the underlying offense, but was in the range for offense as enhanced by a prior conviction. *Id.*

Here, Wilson pleaded true to the enhancement allegations, and he entered into a stipulation of evidence regarding his prior felony convictions. The trial court sentenced Wilson within the range of punishment for the offense as enhanced by Wilson's prior convictions. Under these circumstances, we conclude the trial court impliedly found the enhancements to be true. Accordingly, we modify the trial court's judgment to reflect that punishment was assessed by the trial court; that Wilson pleaded "true" to both enhancement paragraphs; and that the trial court found both enhancement allegations "true."

## CONCLUSION

As modified, we affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2
180801F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
# JUDGMENT

THOMAS WILSON, Appellant

No. 05-18-00801-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F16-71680-T.
Opinion delivered by Justice Partida-Kipness, Justices Whitehill and Pedersen, III participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The Section entitled "Plea to 1st Enhancement Paragraph" is modified to state "True."

The Section entitled "Findings on 1st Enhancement Paragraph is modified to state "True."

The Section entitled "Plea to 2nd Enhancement Paragraph" is modified to state "True."

The Section entitled "Findings on 2nd Enhancement Paragraph is modified to state "True."

The Section entitled "Punishment Assessed by" is modified to state "Trial Court."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 1st day of August, 2019.